OPINION OF THE COURT
Meyer, J.
This appeal requires that we pass upon the rights of persons incarcerated pending trial of criminal charges against them; specifically, whether a pretrial detainee has a right to contact visitation with her family; whether, if so, such a visit may be limited to 10 minutes; whether the penalties imposed for infraction of rules for behavior of jail inmates must be related to particular offenses. A subsidiary issue is whether plaintiffs are entitled to attorneys fees. We hold that pretrial detainees are entitled to contact visits of reasonable duration as a matter of State, though not of Federal, constitutional right, but are not entitled to a revision of the jail system of discipline under either the Federal or the State Constitution, their rights in that respect being adequately protected by available review procedures. On the subsidiary issue, we hold that neither under the Civil Rights Attorney’s Fees Awards Act of 1976 (US Code, tit 42, § 1988) nor under CPLR 909 are plaintiffs entitled to attorneys fees.
The action has been granted class action status under CPLR article 9, the class being "all women inmates of the Monroe County Jail from February, 1974 until the resolution of this action”. The complaint alleges six causes of action under the Civil Rights- Act (US Code, tit 42, § 1983) for which are sought money judgments for the named individual plaintiffs as well as declaratory and injunctive relief for the class. Additionally it sets forth five other causes of action, based upon claimed violations of the Federal and State Constitutions, for injunctive and declaratory relief. The comprehensive and thoughtful opinion of Mr. Justice Edward O. Provenzano (91 Misc 2d 302) lists and passes upon some 21 separate categories of claimed constitutional rights. On plaintiffs’ appeal to the *74 Appellate Division with respect to visitation, recreational opportunities, disciplinary proceedings and attorneys fees, that court modified to require adoption within a reasonable period of time of a program of contact visitation, but otherwise affirmed and remitted for further proceedings (64 AD2d 130). On the appeal to this court the question of recreational opportunities has not been argued, and is deemed abandoned.
The facts so far as necessary to determination of the issues remaining before us are not in dispute. The named plaintiffs are three pretrial detainees and three convicted and sentenced inmates of the Monroe County jail, and they represent as a class all women inmates since February, 1974. The jail occupies 55% of the space in the Monroe County Public Safety Building, which is a modern facility opened in 1971. It was originally intended that female inmates would occupy one half of the fourth floor of the new facility. However, subsequent events required the closing of the nearby county penitentiary, and in the fall of 1971, sentenced male prisoners transferred from that jail to the new facility occupied the fourth floor space.
Lacking room for the female inmates, the county contracted with the City of Rochester to convert and use existing "lockup facilities” on the third floor of the abutting city public safety building. Although the new female detention area did not meet the requirements of the regulations of the State Commission of Correction then in effect, the commission approved the use of the facility on a temporary basis. At the time of trial in 1976 that "temporary” operation had continued for over five years.
Of the women lodged in that facility, more than 90% were pretrial detainees; the rest were serving sentences upon conviction.[1] Currently the women are limited to noncontact visits from family and friends.- Visiting hours are between 1:00 and 4:30 p.m. on Tuesday, Thursday and Sunday. While it appears from the stipulation of the parties that visits can be limited to 10 minutes, the trial court found that women inmates are permitted 15-minute visits and that they frequently ran longer. The facility’s three visiting booths separate the inmates from their visitors by a floor-to-ceiling steel barrier, in *75 which there is a window about two feet by seven inches in size, through which the inmate and her visitor can see each other. Conversation can take place only by use of telephones. Thus, there is no physical contact whatsoever between the inmate and her loved ones or friends.
Direct contact visits are permitted at the Monroe County jail between inmates and attorneys, clergymen, parole and probation officers, drug counselors and persons involved in community projects at the jail. The evidence established also that in another correctional facility, run by the State, convicted female felons are permitted longer visits in an informal setting which allows for direct contact between the inmate and her family or friends. Indeed, the Monroe County prison officials agree that contact visits would be desirable, but state that they have not been implemented because they require additional security measures which would increase costs.
The evidence with respect to the challenge to the system of punishment for violation of jail rules is that jail rules proscribe a variety of acts ranging from disrespectful behavior to cursing, for the infraction of which an inmate can lose the right to recreation or exercise, be confined to an isolation cell for up to 7 days, be confined to her locked cell for 23 hours each day for up to 14 days, or be subject to lesser penalties. Plaintiffs argue that the present system permits random imposition of disparate penalties for similar conduct and ask that the court require that a system which relates the penalty to the offense be established.
The Appellate Division, in a decision written some nine months prior to the decision of the United States Supreme Court in Bell v Wolfish (441 US 520), held that the due process clause of the Fourteenth Amendment of the Federal Constitution requires that a system of contact visitation be instituted, but that the manner and duration of the visits is a matter wholly within the discretion of the prison officials, and as such, beyond the reach of judicial supervision. It also held that since the imposition of specific sanctions was subject to judicial review, the claim that the system of discipline did not "make the punishment fit the crime” was not of constitutional dimension. Finally, it held that the trial court did not abuse its discretion in denying an award of attorneys fees.
For the reasons hereafter set forth we conclude: (1) that (A) contact visitation is not required by either the due process or *76 the equal protection clause of the Fourteenth Amendment to the Federal Constitution but (B) contact visitation of reasonable duration is required by the due process clause of the State Constitution; (2) that Monroe County’s system of jail discipline has not been shown to be constitutionally infirm, and (3) that plaintiffs are not entitled to attorneys fees under Federal statute because they have not prevailed on their Civil Rights Act claims nor are they so entitled under State law because in failing to award them attorneys fees the Trial Judge did not abuse the discretion granted him under CPLR 909.
I
A
In Wolñsh v Levi (573 F2d 118) the Court of Appeals for the Second Circuit held that the due process clause of the Fifth Amendment requires that pretrial detainees in Federal custody be allowed contact visitation, and proscribes certain other practices then in force at the Metropolitan Correctional Center in New York. Though the matter was appealed to the Supreme Court, the ruling as to contact visitation was not appealed, and that court noted (Bell v Wolfish, 441 US 520, 559, n 40, supra), that it expressed no opinion on that phase of the matter. Notwithstanding that it did not pass directly on contact visitation, it would seem from its analysis of the other issues in the case that its ruling will be that contact visitation between a pretrial detainee and his or her family or friends is not constitutionally required. In Bell the court considered challenges to: (1) the practice of double-bunking,[2] (2) the "publisher only” rule,[3] (3) body-cavity searches after contact visits, (4) the prohibition against receipt of packages, and (5) the practice of surprise searches of inmates’ cells. The Court of Appeals for the Second Circuit had held that since pretrial detainees had not been convicted, and therefore were presumed to be innocent, due process required that they be subjected only to those restrictions and privations which inhere in their confinement itself or which are justified by compelling necessities of jail administration.
Rejecting what it considered an intrusive standard of re *77 view, the Supreme Court focused instead on the various constitutional limitations on punishment in the criminal judicial process. The court agreed that the Eighth Amendment proscription against cruel and unusual punishment had no application to pretrial detainees, for they had yet to be convicted. It recognized that the due process clause of the Fifth Amendment proscribed punishment of pretrial detainees, but held that not all prison practices which go beyond the "compelling necessities of jail administration” constitute "punishment”.
Although the court suggested reference to the comprehensive test of what constitutes punishment which was enunciated in Kennedy v Mendoza-Martinez[4] (372 US 144), it ultimately settled on a much less probing inquiry, which Mr. Justice Rehnquist explained as follows: "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]’. Kennedy v. Mendoza-Martinez, 372 U. S., at 168-169; see Fleming v. Nestor, supra [363 US 603], at 617. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment’ ” (441 US 520, 538-539, supra; brackets in original). Applying this test, the court upheld all of the practices against due process challenges on the ground that they were reasonably related to the legitimate objectives of pretrial detention and prison security.
Since the prohibition against contact visits is related to security concerns, which the search procedures outlined in Bell v Wolfish (supra) suggest will require expenditure for additional personnel if not also for rearrangement of the *78 visiting areas, and since the evidence negates any intent to use denial of contact visitation as punishment, the prohibition must be held, as a matter of Federal due process, to be "reasonably related to a legitimate governmental objective”.
Nor does the Federal equal protection clause mandate that plaintiffs be granted contact visitation privileges. Even those courts that have held that the equal protection clause prevents treating pretrial detainees less favorably than convicted prisoners have applied the "rational basis” rather than the "strict scrutiny” test reserved for rights regarded as fundamental (see, e.g., Rhem v Malcolm, 371 F Supp 594, affd 507 F2d 333). Thus, all that need be shown as a matter of Federal constitutional law is that the differentiation made by the statute or regulation has some reasonable basis, not that there is any compelling necessity for it or that it is the least restrictive means possible (see Montgomery v Daniels, 38 NY2d 41, 59-61). That there are rational bases for differentiating between sentenced prisoners and persons detained while awaiting trial cannot be gainsaid. The much longer period of incarceration faced by the former and the fact that the locale of their imprisonment is usually, in the interests of security, in an isolated, rural setting distant from family and friends as distinct from persons awaiting trial whose detention is, generally, for a relatively short period and in facilities located in metropolitan areas near courts, but also near the detainees’ family and friends (see Cooper v Morin, 91 Misc 2d 302, 323) are two such bases.
It, thus, appears that neither as a matter of Federal due process nor Federal equal protection are plaintiffs entitled to an order requiring the allowance of contact visits.
B
That conclusion does not end the inquiry, however, for plaintiffs claim constitutional protection under the State as well as the Federal Constitution. While neither the Trial Judge nor the Appellate Division considered State constitutional claims, the complaint clearly presents them and they may, therefore, be reached by us.[5]
*79 We have not hesitated when we concluded that the Federal Constitution as interpreted by the Supreme Court fell short of adequate protection for our citizens to rely upon the principle that that document defines the minimum level of individual rights and leaves the States free to provide greater rights for its citizens through its Constitution, statutes or rule-making authority (Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 159-161; People v Isaacson, 44 NY2d 511, 519-520; People v Hobson, 39 NY2d 479, 483-484; People v Arthur, 22 NY2d 325, 328-329; and see Howard, State Courts and Constitutional Rights in the Day of the Burger Court, 62 Va L Rev 873; Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv L Rev 489).
Section 6 of article I of our Constitution mandates that "No person shall be deprived life, liberty or property without due process of law”. As we have noted in Wilkinson v Skinner (34 NY2d 53, 58), "The requirements of due process are not static; they vary with the elements of the ambience in which they arise”. While we are in agreement with the Supreme Court’s holding in Bell v Wolfish (441 US 520, supra) that due process forbids the punishment of pretrial detainees because punishment can only be imposed after conviction, we cannot agree that the validity of the regimen imposed upon such persons during detention turns on no more than whether a regulation has a legitimate purpose other than punishment and is not excessive in relation to that purpose. So one-sided a concept of due process we regard as unacceptable. In our view what is required is a balancing of the harm to the individual resulting from the condition imposed against the benefit sought by the government through its enforcement.
The approach is not novel in relation to prison regulations. The Eighth Circuit Court of Appeals in Moore v Ciccone (459 F2d 574, 576) used it, holding that "when the claim is that a prison regulation infringes upon a constitutional right, 'a court must balance the asserted need for the regulation in furthering prison security or orderly administration against the claimed constitutional right and the degree to which it has been impaired’ ” (quoting Smith v Robbins, 328 F Supp *80 162, 164, affd 454 F2d 696), and the Supreme Court itself has adopted it in Pell v Procunier (417 US 817), in passing upon the First Amendment question whether newsmen need be given free access to convicted prisoners. It is, of course, the essence of the dissents in Bell v Wolfish (441 US 520, supra) and has been applied by the Supreme Court of Alaska in McGinnis v Stevens (543 P2d 1221 [Alaska]; see, also, Note, Conjugal Visitation Rights and the Appropriate Standard of Judicial Review for Prison Regulations, 73 Mich L Rev 398, 414-416; Note, Constitutional Limitations on the Conditions of Pretrial Detention, 79 Yale LJ 941, 950). Indeed, it is not without significance in view of the part that English practices play in our analysis of traditional concepts of due process to note that Blackstone wrote in 1765 (4 Blackstone Commentaries, p 300): "[T]his imprisonment, as has been said, is only for safe custody, and not for punishment: therefore, in this dubious interval between the commitment and trial, a prisoner ought to be used with the utmost humanity, and neither be loaded with needless fetters, or subject to other hardships than such as are absolutely requisite for the purpose of confinement only”.
On the detainee’s side of the balance is the fundamental right to marriage and family life on the one hand and to bear and rear children on the other, recognized in our decisions in People ex rel. Portnoy v Strasser (303 NY 539, 542) and Fearon v Treanor (272 NY 268, 272-273, app dsmd 301 US 667), and such Supreme Court decisions as Zablocki v Redhail (434 US 374, 383-387); Roe v Wade (410 US 113); Boddie v Connecticut (401 US 371); Griswold v Connecticut (381 US 479, 486, 496 [Justice Goldberg concurring]), and Skinner v Oklahoma (316 US 535, 541); (see, also, Note, Fundamental Right to Family Integrity and Its Role in New York Foster Care Adjudications, 44 Brooklyn L Rev 63). The detrimental effect upon spousal and parent-child relationships of the denial of contact, if not obvious, is attested to not only by expert testimony (see Rhem v Malcolm, 507 F2d 333, supra) and numerous books and articles (see McGowan & Blumenthal, Why Punish The Children: A Study of Children of Women Prisoners; Schwartz. & Weintraub, The Prisoner’s Wife: A Study in Crisis, 38 Fed Prob No. 4, 20; Zemans and Cavan, Marital Relationships of Prisoners, 49 J Grim L and Criminology 50; Simpson, Conjugal Visiting in United States Prisons, 10 Col Human Rights L Rev 643; Note, On Prisoners and *81 Parenting: Preserving the Ties, 87 Yale LJ 1408; Karten, Mothers Behind Bars — What Happens To Their Children), but also by the prison officials of Monroe County who candidly admitted that contact visits would be beneficial and a more humane method of detention, which they have not provided simply because of budgetary limitations.
On the State’s side of the equation deterrence, retribution and rehabilitation play no part since we speak, by hypothesis, of persons as yet untried. The only legitimate purpose for pretrial detention then is to assure the presence of the detainee for trial. To this end the State may adopt security measures intended to frustrate possible attempts at escape or the passage of contraband from a visitor to a detainee, and in the adoption of such measures the expertise of professional administrators is entitled to respectful consideration. But when so fundamental a right as the maintenance by pretrial detainees of relationships with family and friends is involved the measure adopted must be both reasonable and necessary to the maintenance of security.
The imposition upon the detainee’s rights of the system of noncontact visitation outlined above when contact visitation is recognized by the authorities as the more desirable is clearly unreasonable[6] unless sustained by a strong showing of necessity. Here we are told only that contact visitation would require additional expenditure for rearrangement of the facility and for added personnel to conduct required search procedures. But as we have previously noted “to exalt economic considerations over the rights of our citizens is nothing more *82 than abdication of this court’s constitutional responsibility” (Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 167, n 7, supra; see Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd., 41 NY2d 84, 90; Note, Constitutional Limitations on the Conditions of Pretrial Detention, 79 Yale LJ 941, 955; Note, Conjugal Visitation Rights and the Appropriate Standard of Judicial Review for Prison Regulations, 73 Mich L Rev 398, 406-407).
We agree, therefore, as a matter of State constitutional law, with the Appellate Division’s requirement that a program of contact visitation for female detainees of the Monroe County jail must be instituted within a reasonable period of time. We disagree with its disposition only with respect to the length of the visitation period allowed. The stipulation of the parties tells us that visitation may be limited to 10 minutes, but the Trial Judge’s findings indicate that 15 minutes is usual and that visitation often runs longer. Limitations of space and time and the requirements of daily routine must, of course, be met, but so woefully short a period as 10 minutes will hardly be meaningful in most situations. The program as devised should, therefore, provide for visitation during a sufficient number of hours per week to allow for visitation of reasonable duration for each detainee desiring visitation. What is "reasonable duration” is, of course, a function of the space and hours allocated for visitation and the number of persons having visitors on a given day but the system should strive for visits of substantially longer than 10 minutes duration and should be flexible enough to permit extension of visits beyond the minimum period when circumstances permit.
II
 Plaintiffs’ challenge to the disciplinary rules of the jail must, however, fail. Although the penalties for violations of prison regulations cannot be grossly disproportionate to the offense (see Hutto v Finney, 437 US 678), there has not been a sufficient showing that such is the case here. All that this record reveals is that in two instances severe penalties have been imposed where sentenced inmates had shown disrespect for, or disobedience of, prison personnel. Even if plaintiffs’ characterization of those instances be accepted, this does not establish a pattern of abuse which would warrant invalidation of a system of prison discipline. Of course, before a penalty is imposed, an inmate can obtain a hearing as to the offense *83 (Wilkinson v Skinner, 34 NY2d 53, supra). Detainees are, thus, adequately protected from arbitrary action.
III
To the extent that plaintiffs’ fee claim rests upon the Civil Rights Attorney’s Fees Awards Act of 1976 (US Code, tit 42, § 1988) it cannot be sustained because, in consequence of our reading of Bell v Wolfish (441 US 520, supra), plaintiffs have not prevailed on any of their Civil Rights Act causes of action (see Mid-Hudson Legal Servs. v G & U, Inc., 578 F2d 34). That they have prevailed on their State constitutional claim in a declaratory judgment action maintained as a class action permitted the Trial Judge to award fees in his discretion and "if justice requires” allow recovery of the fee awarded from the opponent of the class (CPLR 909). We agree with the Appellate Division, however, that under the circumstances of this case it was not an abuse of discretion for him to conclude that justice did not so require (cf. Wilkinson v Skinner, 34 NY2d 53, 62, supra).
Accordingly, the order of the Appellate Division should be modified in accordance with this opinion and, as so modified, affirmed.

. While some plaintiffs are not pretrial detainees, the briefs in this court, as in the courts below (see 64 AD2d 130, 132) have addressed the issues as though the class consisted only of pretrial detainees. This opinion is, therefore, limited to discussion of the rights of pretrial detainees.

. "Double-bunking” is simply the practice of housing two inmates in a single cell.

. The "publisher only” rule limits an inmate’s reception of books to those sent directly by the publisher. It is thought that this diminishes the possibility that books will be used to smuggle in weapons or other prohibited material.

. In Mendoza-Martinez the court suggested consideration of the following factors for deciding whether a given measure is punitive (372 US, at pp 168-169): "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment— retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.”

. The Trial Judge suggested that the form of the action and the absence of the county as a party limited his consideration of State constitutional claims (91 Misc 2d 302, 361). As already noted the complaint seeks declaratory relief, but had it not CPLR 103 would have pérmitted the court to convert it to an action for declaratory judgment. And since Sheriff Lombard and Superintendent Stanwick are parties in *79 both their individual and official capacities (91 Misc 2d 302, 309, supra), the absence of the county as a party does not prevent the granting of declaratory relief.
The Appellate Division, finding Federal constitutional authority for its ruling that contact visitation was required, apparently concluded that it need not discuss the State issues.

. We have not overlooked Mr. Justice Rehnquist’s repeated references to the fact that nearly all of the detainees involved in Bell are released with 60 days (441 US 520, 543, 555, n 35, 562). The answers are several. The stipulated facts here do not inform us how many detainees are held for more than 60 days, but do tell us that in 1974 22% or 1,374 persons were held more than 30 days and in 1975 15Vz% or 1,086 persons were held for more than 30 days. Thus, we deal with a substantial number of women being deprived of contact for an unreasonably long period. More important, the early stages of confinement of a pretrial detainee who is not a "regular” at the jail will be a time of greater stress and, therefore, greater need for contact visiting on the part of the detainee, and of shock and tension for children, who will, therefore, need the reassurance of contact visitation, not the disquieting, if not devastating experience of "visits” through an impenetrable barrier. The point is that the detainees and their familes are individuals whose cases must be individually considered. There may be reason in an individual case for not permitting contact for a short period, but any rule that fixes an arbitrary number of days during which contact visitation can be proscribed solely on the ground of administrative convenience is in our view arbitrary and, therefore, unconstitutional.