652 A.2d 712

AL–TARIQ JACOBS, APPELLANT–APPELLANT, v. ROBERT STEPHENS, RESPONDENT–RESPONDENT.

Argued September 12, 1994—Decided January 25, 1995.

*Matthew Astore,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Acting Public Defender, attorney; *Susan Remis Silver,* Deputy Public Defender, of counsel; *Ms. Silver, Susan R. Oxford* and *Patricia P. Perlmutter,* Assistant Deputies Public Defender, on the briefs).

*Madeleine W. Mansier,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti* and *Mary C. Jacobson,*

Assistant Attorney General, of counsel; *Dianne M. Moratti* and *Patrick DeAlmeida*, Deputy Attorneys General, on the briefs).

*Al–Tariq Jacobs* submitted briefs *pro se.*

The opinion of the Court was delivered by

GARIBALDI, J.

In this appeal, as in *McDonald v. Pinchak*, 139 *N.J.* 188, 652 *A.*2d 700 (1995), also decided today, Al–Tariq Jacobs, an inmate in a New Jersey state prison, contends that state action taken at his disciplinary hearing violated procedural due process and the "fairness and rightness" standard of New Jersey. Specifically, Jacobs asserts that the hearing officer failed to adhere to the Department of Corrections' own regulations that the inmate shall have twenty-four hours to prepare a defense. He also asserts that the hearing officer violated *N.J.A.C.* 10A:4–9.13(a), which provides that inmates shall be allowed to call witnesses and present documentary evidence, and *N.J.A.C.* 10A:4–9.14a, which provides that inmates shall, if they request, have the opportunity to confront and cross-examine witnesses. As in *McDonald, supra,* the hearing officer asserts that Jacobs never asserted the right to call witnesses or to confront and cross-examine adverse witnesses. Jacobs also alleges that the evidence was insufficient to support the hearing officer's finding of guilt.

As in *McDonald,* we reaffirm the standards set forth in *Avant v. Clifford*, 67 *N.J.* 496, 341 *A.*2d 629 (1975), and in the Department of Corrections (DOC) regulations, but we modify some of DOC's disciplinary hearing practices to ensure further that DOC properly implements the standards announced in *Avant* and its own regulations, and fairly conducts disciplinary hearings.

I

Inmate Jacobs was charged with "threatening another with bodily harm" in an argument with a prison guard, in violation of *N.J.A.C.* 10A:4–4.1(a)*005.

At about 2:00 p.m. on September 14, 1992, Jacobs asked to leave his cell block to attend a meeting of the Prison Representative Committee (PRC). A few minutes later, Corrections Officer Hawkins announced an inmate count and refused to permit Jacobs to go to the PRC meeting, instead ordering him to return to his cell. Jacobs yelled profanities at Hawkins. Hawkins asked Jacobs for his identification card, and Jacobs responded, "Fuck you, I ain't giving you shit. If you want my I.D., step in the back room." Hawkins immediately notified his superiors, charged Jacobs with "threatening another with bodily harm," and placed Jacobs in pre-hearing detention. Corrections Officer Wallace described the incident a bit differently in a special report. According to Wallace, Jacobs said that his I.D. was "in the back room" and as Officer Hawkins turned to walk away, Jacobs stated, "come on, come on I'll fuck you up."

Sgt. Idlett delivered a copy of the disciplinary report regarding the charge to Jacobs at 10:30 a.m. on September 15, 1992. An investigation of the charge conducted the same day revealed two inmate witnesses who provided evidence that supported the charge against Jacobs. The hearing then occurred twenty-two-and-one-half hours later, at 8:55 a.m. on September 16, 1992. Hearing Officer Arthur Saltzman conducted the proceeding. The hearing officer claims he did not realize that the hearing should have been held one-and-one-half hours later. He observed, however, that he had asked whether Jacobs was ready to proceed, and neither Jacobs nor his counsel substitute had requested more time.

The one-page hearing report indicates Jacobs's defense was that "I may have used abusive language but I didn't threaten him." The hearing officer found Jacobs guilty and sanctioned Jacobs to fifteen days detention, 180 days loss of commutation time, and 180 days administrative segregation. The hearing report states that the reason for the sanction was that "the officer who wrote charge perceived the situation as a threat. In mitigation, there is [sic] some inconsistencies in what actually was said...."

An Assistant Superintendent of Corrections upheld the hearing officer's decision, stating "the charge and special report related a definite threat." The Administrator of Northern State Prison upheld the assistant superintendent's decision. Jacobs appealed and the Appellate Division summarily affirmed, stating that "as the decision of the Prison Administrator was based upon substantial credible evidence in the record, the decision is within his jurisdiction and is not arbitrary, capricious or unreasonable, [and] it is entitled to affirmance by this court." We granted Jacobs's petition for certification, 134 *N.J.* 478, 634 *A.*2d 525 (1993).

## II

Jacobs correctly asserts that his hearing, held only twenty-two-and-one-half hours after receipt of written notice, was in violation of the regulation that inmates shall have twenty-four hours between receipt of written notice and hearing to prepare a defense. He further asserts that that infraction violated both his constitutional due-process rights and administrative fairness.

Federal and state laws governing the due-process claims of prisoners have evolved considerably over the last twenty years. *See McDonald, supra,* 139 *N.J.* at 193–199, 652 *A.*2d at 702–705. In 1974, the United States Supreme Court set forth the minimal federal due-process requirements for prison disciplinary hearings. In *Wolff v. McDonnell,* 418 *U.S.* 539, 94 *S.Ct.* 2963, 41 *L.Ed.*2d 935 (1974), the Court held that Nebraska's provision permitting prison officials to give inmates oral notice of charges only at the time of a disciplinary hearing violated the Fourteenth Amendment. *Id.* at 565, 94 *S.Ct.* at 2979, 41 *L.Ed.*2d at 955–56. The Court ruled that written notice must be given to an inmate charged with a violation "to inform him of the charges and to enable him to marshall the facts and prepare a defense." *Id.* at 565, 94 *S.Ct.* at 2979, 41 *L.Ed.*2d at 956. The Court stated, "At least a brief period of time after the notice, no less than twenty-four hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." *Ibid.*

After *Wolff,* New Jersey adopted the twenty-four-hour standard in nearly verbatim form: "no less than twenty-four hours should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." *Avant, supra,* 67 *N.J.* at 525, 341 *A.*2d 629. We upheld the standard as satisfying both federal and state constitutional mandates even though it was quasi-mandatory ("no less than") and quasi-discretionary ("should"). *See ibid.* Subsequent to *Avant,* the twenty-four-hour rule was amended. *N.J.A.C.* 10A:4–9.2 now provides that "[t]he disciplinary report shall be served upon the inmate within 48 hours after the violation ... [and the] inmate shall have 24 hours to prepare his/her defense."

No one disputes that the disciplinary hearing on Jacobs's charge commenced at 8:55 a.m. on September 16, 1992, approximately one-and-one-half hours prior to the expiration of the required twenty-four hour period. In his affidavit, the hearing officer stated he did not realize that the hearing should have commenced at 10:30 a.m. He also claimed that neither Jacobs nor the counsel substitute appointed at Jacobs's request told him that slightly less than twenty-four hours had passed since Jacobs had received notice of the charge. The hearing officer also stated that he routinely asks inmates and their counsel substitutes whether they are ready to proceed with a disciplinary hearing. On the occasions when inmates or counsel substitutes indicate that they are not prepared to go forward with the proceeding, the hearing officer postpones the hearing and makes a notation of his decision on the adjudication form. He asserted that neither Jacobs nor counsel substitute had asked for more time for preparation. He claimed that if such a request had been made, he would have granted it.

Deviation from the twenty-four-hour rule, a short period of time to begin with, should be permitted only in extreme circumstances. Such deviation may prejudice a defendant-inmate and is not acceptable under the governing law. Simple neglect by the hearing officer to ensure compliance with that regulation usually will not constitute such an extreme circumstance. Nor will

the fact that neither the inmate nor his counsel substitute made a request to postpone the hearing, or asked for any additional time to prepare for the disciplinary proceeding, constitute such a circumstance. Nevertheless, overwhelming evidence supports the hearing officer's determination that Jacobs threatened Officer Hawkins, *infra* at 222–223, 652 *A.*2d at 716–717. Under those circumstances, we find that DOC's error in commencing Jacobs' disciplinary hearing one-and-one-half hours before the required twenty-four hours was harmless and did not prejudice him.

■ A harmless-error analysis is applied typically to a "denial of rights accorded to defendants to facilitate their defense." *Johnstone v. Kelly,* 808 *F.*2d 214, 218 (2d Cir.1986); *Chapman v. United States,* 553 *F.*2d 886, 891 (5th Cir.1977); *United States v. Dougherty* 473 *F.*2d 1113, 1127 (D.C.Cir.1972). Harmless error may not be applied to rights that are essential to the fundamental fairness of a trial, like self-representation. *Ibid.; e.g. Gideon v. Wainwright* 372 *U.S.* 335, 83 *S.Ct.* 792, 9 *L.Ed.*2d 799 (1963); *accord Giano v. Sullivan,* 709 *F.Supp.* 1209, 1217 (S.D.N.Y.1989) (finding that harmless error could not be applied to inmate's disciplinary hearing, which resulted in a special, five-year confinement without any phone, package, or commissary privileges, because both his right to marshal evidence and present a defense and right to an impartial hearing officer were denied).

■ Application of the harmless-error rule to the alleged deprivation of Jacob's right to have the full twenty-four hours to prepare his defense requires a two-step approach: review of the regulations to insure the protection of an inmate's fundamental due process rights, and on a determination that the minimal requirements of due process have been met, review of the prejudice alleged by defendant. *Von Kahl v. Brennan,* 855 *F.Supp.* 1413, 1421 (M.D.Pa.1994). Once a court has balanced these concerns, a court should be "reluctant to overtax and/or hamstring prison officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical non-compliance

with a regulation, absent some showing of prejudice to the inmate." *Id.* at 1422; *accord Layton v. Beyer,* 953 *F.*2d 839, 850 (3d Cir.1992) (deciding whether a hearing was afforded within a reasonable time, court found that "[t]he answer lies only by a careful review and consideration of the then existing circumstances"); *Hyson v. Neubert,* 820 *F.Supp.* 184, 190 (D.N.J.1993) (finding that "due process requires only that the proceedings viewed as a whole not lead to a constitutionally tainted result").

The dissent misconstrues our application of the harmless error rule to the case at hand and misinterprets case law from other jurisdictions. *See ibid.; see also Ex parte Floyd,* 457 *So.*2d 961, 962 (Ala.1984) (holding that twenty-four-hour notice should apply in inmate's case where he "received a copy of the written charge ... three days after his disciplinary hearing"); *O'Malley v. Sheriff of Worcester County,* 415 *Mass.* 132, 612 *N.E.*2d 641, 647 n. 12 (1993) (holding that twenty-four-hour notice should apply in inmates' cases where no notice of the charges against them was given before the disciplinary proceeding); *Cooper v. Morin,* 91 *Misc.*2d 302, 398 *N.Y.S.*2d 36, 65 (citing twenty-four-hour notice from *Wolff, supra,* and noting that newly amended New York state standards did not satisfy the requirements of *Wolff*). We apply the harmless-error rule to the alleged deprivation of Jacob's right to have the full twenty-four hours to prepare his defense because it is not a right that is essential to the fundamental fairness of his hearing, and because we find no prejudice. Hence, we do not remand this case for another disciplinary hearing.

### III

Whether Jacobs is actually claiming that the hearing officer violated *N.J.A.C.* 10A:4–9.13(a), which provides that "[i]nmates shall be allowed to call witnesses and present documentary evidence in their defense ... when permitting them to do so will not be unduly hazardous to correctional facility safety or goals" is unclear. The adjudication form does not reflect a request by Jacobs to call any inmate witnesses on his behalf. The hearing

officer further corroborates the conclusion that Jacobs did not try to call any witnesses in his explanation that his notation of "none requested" means precisely that neither Jacobs nor his counsel substitute requested additional witness statements. However, Jacobs claims that at his hearing he was denied the ability to call an inmate witness on his behalf, in violation of his due-process rights. Moreover, in his affidavit Jacobs claims that he asked whether the investigating officer had "interviewed" particular inmate witnesses but that he received no response. Jacobs does not, however, claim that he actually attempted to call witnesses at the hearing.

Instead, Jacobs complains that he was unable fully to investigate or prepare his case. For example, although *N.J.A.C.* 10A:4–9.5(e) states that the inmate "shall not" receive a copy of the investigation report, Jacobs argues that the hearing officer should have turned over inmate witness statements gathered during the investigation. In his affidavit, the Assistant Commissioner of DOC explains that for security reasons, prison officials do not share all the witnesses' statements with the charged inmate. Many witnesses interviewed during the investigation are assured that their names will not be disclosed to the charged inmate because of the threat of retaliation. If inmates did not receive such an assurance, they might be reluctant to speak to prison officials. Such security concerns are a valid reason for denying the investigation report under *N.J.A.C.* 10A:4–9.5(e).

*N.J.A.C.* 10A:4–9.14(b), however, provides that confrontation and cross-examination may be refused only when they would be unduly hazardous to institutional safety or correctional goals. To facilitate confrontation and cross-examination, we suggest that DOC consider promulgating a similar regulation that would allow inmate defendants to receive the statements of other inmate witnesses provided that the DOC finds that such a disclosure would not compromise prison safety.

Jacobs also does not claim directly that he requested confrontation and cross-examination of any witnesses and was denied his

procedural due-process rights under *N.J.A.C.* 10A:4–9.14(a). Instead, Jacobs claims that he was not informed of his right to confrontation and cross-examination and therefore he could not validly waive those rights. That assertion is quite different from that of inmate McDonald in the accompanying case, *see McDonald, supra,* 139 *N.J.* at 195–197, 652 *A.*2d at 703–704.

Constitutional rights are effective to protect inmates only if they are aware that they can exercise them. With that guiding principle we hold, therefore, that prisoners should be informed of their right to confrontation and to cross-examination. Prisoners should be told of their rights to remain silent and to make statements concerning the charges, and of the availability of "use" immunity. *Avant, supra,* 67 *N.J.* at 544, 341 *A.*2d 629. We are unable to determine whether Jacobs was so informed, but we conclude that even if he was not so informed, he was not prejudiced because the testimony of his inmate witnesses did not support his position. In future cases, however, the inmate will be deemed informed because he must sign an amended Adjudication Form, see *McDonald, supra,* 139 *N.J.* at 199, 652 *A.*2d at 705, one of whose questions will be whether the inmate seeks confrontation or cross-examination.

## IV

Finally, Jacobs argues that sufficient "substantial evidence" did not exist to support the allegation that he had threatened Officer Hawkins with bodily harm. Jacobs contends that even though he used abusive language, he did not intend to threaten Officer Hawkins. The determination of whether a remark constitutes a threat is made on the basis of an objective analysis of whether the remark conveys a basis for fear. In the context of criminal prosecutions, where the prevailing evidentiary standard is much higher than that applicable to disciplinary proceedings, a person may be convicted of terroristic threats when "the words or conduct [are] of such a nature as would reasonably convey the menace or fear of death to the ordinary hearer." *State*

*v. Nolan,* 205 *N.J.Super.* 1, 4, 500 *A.*2d 1 (App.Div.1985); *accord State v. Smith,* 262 *N.J.Super.* 487, 515–17, 621 *A.*2d 493 (App. Div.), *certif. denied,* 134 *N.J.* 476, 634 *A.*2d 523 (1993); *State v. Milano,* 167 *N.J.Super.* 318, 322–23, 400 *A.*2d 854 (Law Div.1979), *aff'd,* 172 *N.J.Super.* 361, 412 *A.*2d 129 (App.Div.), *certif. denied,* 84 *N.J.* 421, 420 *A.*2d 333 (1980).

Every witness who submitted a statement at Jacobs's disciplinary hearing, either for the institution or for the inmate, supported the hearing officer's determination that Jacobs had threatened an officer. Officer Hawkins's report stated that in response to an order to produce his identification card, Jacobs had yelled at the officer with threatening language. In direct reply to the officer's order, Jacobs shouted, among other things, "Fuck you, I'm not giving you shit. If you want my ID step in to the back room." Officer Wallace witnessed Jacobs's threatening behavior, hearing Jacobs snarl that "my I/D is in my room motherfucker come and get it." In addition, Officer Wallace heard Jacobs taunt Officer Hawkins by stating "come on, come on, I'll fuck you up."

Even Jacobs's own testimony supported the hearing officer's finding that Jacobs had threatened Officer Hawkins. At his disciplinary hearing Jacobs admitted that his remarks to Officer Hawkins were "heated" and that he had told Hawkins "to get the fuck out of [my] face."

In addition, the statements of two inmate witnesses identified by Jacobs supported the finding of guilt. Inmate Garrett indicated that "Jacobs was angry" and that he was "arguing" with Officer Hawkins. Inmate Barnes stated that Jacobs "might" have used abusive language towards the officer, but denied any threat had been made.

Clearly, a reasonable mind could conclude that Jacobs had threatened Officer Hawkins. The remark that Jacobs admitted having made, telling the officer "to get the fuck out of [my] face" during a "heated" discussion, standing alone would be sufficient to justify the conclusion that a threat had been made. However, that threat was not the sole comment made by Jacobs, according to

witnesses. When words of an inmate are of such a nature as would reasonably convey the menace or fear of death to the ordinary hearer, then that is a threat of bodily harm and therefore punishable under *N.J.A.C.* 10A:4–4.1(a)*005.

We affirm the judgment of the Appellate Division.

STEIN, J., dissenting.

The Department of Corrections disciplinary hearing implicated by this appeal violated the departmental regulation mandating that inmates be afforded not less than twenty-four hours between notification of charges and commencement of the hearing for the purpose of preparing a defense. *N.J.A.C.* 10A:4–9.2. Although the issue was not raised, the hearing also violated *N.J.A.C.* 10A:4–9.12, which requires that "counsel substitutes" be afforded "at least 24 hours to prepare the inmate's defense." The record suggests that appellant's counsel-substitute met with appellant for the first time a few minutes before the hearing. The Court acknowledges the twenty-four-hour-notice requirement to be of constitutional dimension, *ante* at 217–218, 652 *A.*2d at 714. See *Wolff v. McDonnell,* 418 *U.S.* 539, 564, 94 *S.Ct.* 2963, 2978, 41 *L.Ed.*2d 935, 956 (1974); *Avant v. Clifford,* 67 *N.J.* 496, 525, 341 *A.*2d 629 (1975). Nevertheless, the Court characterizes that violation as harmless error because overwhelming evidence supported the hearing officer's determination that appellant had committed the charged offense. *Ante* at 221–223, 652 *A.*2d 715–716. In my view, absent a knowing and informed waiver, the mandatory twenty-four-hour waiting period between notice of charges and commencement of a hearing should be regarded as an essential element of appellant's due-process rights, and its violation should result in vacation of the Hearing Officer's determination and a remand for a new disciplinary hearing.

I

The material facts are not disputed. The offending conduct occurred at approximately 2:00 p.m. on September 14, 1992. A

Corrections Officer placed Jacobs in pre-hearing detention after charging him with "threatening another with bodily harm." Another officer delivered to Jacobs a copy of the written charges at 10:30 a.m. on September 15. Jacobs was not afforded an opportunity to meet with his counsel substitute until the following morning, shortly before the disciplinary hearing, which commenced at 8:55 a.m. on September 16, 1992. The Hearing Officer was unaware that the hearing was beginning before Jacobs had had twenty-four-hours notice of the charges. The Hearing Officer noted that neither Jacobs nor his counsel-substitute had requested more time when asked if they were ready to proceed, but no express waiver of the twenty-four-hour-notice period had been solicited or provided.

## II

*Wolff, supra,* 418 *U.S.* at 563–64, 94 *S.Ct.* at 2978–79, 41 *L.Ed.*2d at 955–56, reveals that the twenty-four-hour-notice requirement is rooted in due process. Inmates of the Nebraska Penal and Correctional Complex instituted suit alleging that various disciplinary practices and proceedings at the Complex did not comply with the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. Among the challenged procedures was the Nebraska Complex's practice of providing inmates charged with disciplinary violations oral notice of the charges "somewhat in advance" of the hearing before the committee responsible for imposing discipline, and on other occasions providing inmates with their first notice of charges at the time of the hearing before the committee. *Id.* at 564, 94 *S.Ct.* at 2979, 41 *L.Ed.*2d at 955. Finding the challenged practice to be constitutionally inadequate, the Court held that

if the minimum requirements of procedural due process are to be satisfied * * * written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee.

[*Id.* at 563–64, 94 *S.Ct.* at 2978, 41 *L.Ed.*2d at 955–56.]

In *Avant, supra,* 67 *N.J.* at 525, 341 *A.*2d 629, we confirmed that the twenty-four-hour-notice requirement was necessary to satisfy the demands of due process in the context of an action challenging the constitutionality of prison-disciplinary standards. We observed that

> [t]he first requirement of procedural due process is notice. *Wolff* requires and the Standards provide "that written notice * * * be given to the disciplinary action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. * * * [N]o less than 24 hours should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." See Standards, 254.262. Such notice of a specific alleged violation, plus the amplitude of general notice of prison rules, offenses, sanctions and the like, to which we have already referred, seem to us to fully satisfy constitutional and "fairness" requirements of notice.

> [*Ibid.*]

Other courts presented with allegations that prison-disciplinary proceedings did not comply with the minimal twenty-four-hour-notice requirement have set aside the discipline imposed and, on occasion, assessed damages against prison officials. For example, in *Martin v. Foti,* 561 *F.Supp.* 252 (E.D.La.1983), inmates of a Louisiana state prison filed a 42 *U.S.C.A.* § 1983 (section 1983) action against prison officials alleging violations of the prisoners' constitutional rights in respect of placement in administrative segregation and the procedure followed in disciplinary hearings. The prison's regulations did not require written notice of charges to be provided to inmates in advance of disciplinary hearings, and the evidence adduced by the plaintiffs demonstrated that they had specifically requested and been denied copies of the disciplinary reports alleging their commission of violations. The court, concluding that the prisoners' due-process rights had been violated, ordered that the determinations of guilt of disciplinary violations be expunged from their records and assessed damages against the responsible prison officials. *Id.* at 261–62. The court stated:

> As to the first requirement of *Wolff* set forth above, however, it is clear that defendants have violated plaintiffs' constitutional rights. The regulations themselves do not require any notice whatsoever to be given inmates of the charges for which they are brought before the disciplinary board, and the prison practice is clearly only to give oral notice, if that. In the specific instances in question,

moreover, plaintiffs requested written notice of the charges by requesting copies of the disciplinary reports.

Therefore, the Court finds that the defendants did violate plaintiffs' constitutional rights under the Due Process Clause of the Fourteenth Amendment to receive written notification of the charges against them at least twenty-four hours prior to appearing before the disciplinary board.

[*Id.* at 261.]

*See also Ex Parte Floyd,* 457 *So.*2d 961, 962 (Ala.1984) (reversing prison-disciplinary board ruling depriving inmate of good-time credits, and holding that failure to provide twenty-four-hours prior written notice of charges violated prisoner's due-process rights); *Kelly v. State,* 455 *So.*2d 1016, 1017 (Ala.Crim.App.1984) (holding that failure of prison officials to provide inmate with at least twenty-four-hours prior written notice of charges constituted denial of due-process rights); *O'Malley v. Sheriff of Worcester County,* 415 *Mass.* 132, 612 *N.E.*2d 641, 647 n.12 (1993) (holding that failure of prison officials to provide prisoners with written notice of charges at least twenty-four hours prior to disciplinary hearing violated inmates' due-process rights); *Cooper v. Morin,* 91 *Misc.*2d 302, 398 *N.Y.S.*2d 36, 64–65 (Sup.Ct.1977) (holding that due-process requirement of twenty-four-hour advance notice of disciplinary charges applied to inmate-disciplinary proceedings in county jails), *aff'd and modified on other grounds* 64 *A.D.*2d 130, 409 *N.Y.S.*2d 30 (1978), *modified* 49 *N.Y.*2d 69, 424 *N.Y.S.*2d 168, 399 *N.E.*2d 1188 (1979), *cert. denied,* 446 *U.S.* 984, 100 *S.Ct.* 2965, 64 *L.Ed.*2d 840 (1980); *People v. Stoddard,* 107 *Misc.*2d 964, 435 *N.Y.S.*2d 1003, 1004 (Cty.Ct.1980) (reversing disciplinary sanction, and holding that notwithstanding inmate's admission of guilt, provision of eighteen-hour rather than twenty-four-hour advance written notice of charges constituted due-process violation).

The State asserts that the failure to afford Jacobs twenty-four-hours written notice of the charges prior to commencement of the hearing is not significant because neither Jacobs nor his counsel-substitute requested additional time when the Hearing Officer asked if they were prepared to proceed. However, the Hearing Officer was unaware that the hearing was beginning prematurely,

and the record does not indicate that either Jacobs or his counsel-substitute was aware that less than twenty-four hours had elapsed between receipt of notice of the charges and commencement of the hearing. Under those circumstances, Jacobs could not have effected a valid waiver of his due-process right to twenty-four-hours notice of the charges prior to hearing, because he was unaware that that right was about to be violated. *See, e.g., Johnson v. Zerbst,* 304 *U.S.* 458, 463–64, 58 *S.Ct.* 1019, 1022–23, 82 *L.Ed.* 1461, 1466 (1937). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Id.* at 464, 58 *S.Ct.* at 1023, 82 *L.Ed.* at 1466. See *North Carolina v. Butler,* 441 *U.S.* 369, 373, 99 *S.Ct.* 1755, 1757, 60 *L.Ed.*2d 286, 292 (1979); *State v. Kremens,* 52 *N.J.* 303, 310–11, 245 *A.*2d 313 (1968).

The Court concedes that Jacobs did not receive twenty-four-hours written notice of the charges in advance of the hearing, but concludes that the error was harmless because "overwhelming evidence supports the hearing officer's determination that Jacobs threatened Officer Hawkins." *Ante* at 219, 652 *A.*2d at 715. No justification exists, however, for diluting the due-process rights of prisoners by application of a harmless-error analysis. *See Giano v. Sullivan,* 709 *F.Supp.* 1209, 1217 (S.D.N.Y.1989) ("We decline to apply harmless error analysis to the constitutional defects in petitioner's disciplinary hearing."); *see also Von Kahl v. Brennan,* 855 *F.Supp.* 1413, 1422 (M.D.Pa.1994) ("To the extent that the regulations in fact actually track the requirements of due process, failure to comply with them is subject to reversal * * *.").

The Court's harmless-error analysis also fails to recognize that the due-process rights applicable to prison-disciplinary proceedings are minimal protections, already having been watered down to reflect the unique requirements of a prison environment:

[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. * * * In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.

[*Wolff, supra,* 418 *U.S.* at 556, 94 *S.Ct.* at 2975, 41 *L.Ed.*2d at 951.]

The requirement of at least twenty-four-hours notice of charges prior to a disciplinary hearing constitutes the Supreme Court's resolution of the "mutual accommodation" required to balance the needs of prison discipline against the protections afforded by the Due Process Clause. That accommodation has been reflected in a mandatory regulation adopted by the Department of Corrections. *N.J.A.C.* 10A:4–9.2. In upholding the sanctions imposed on Jacobs in the face of an undisputed violation of his due-process rights, the Court undervalues the importance of full compliance with the minimal constitutional protections afforded in prison-disciplinary hearings, and overestimates the importance of affirming the result in this proceeding.

The Supreme Court observed in *Wolff, supra,* that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." 418 *U.S.* at 555–56, 94 *S.Ct.* at 2974, 41 *L.Ed.*2d at 950. The Court dishonors that principle when it ignores a clear violation of due-process rights simply because the evidence established the inmate's guilt of the charged offense. Rather than encouraging compliance with the minimal due-process protections applicable to disciplinary hearings, the Court's holding signals that violations of prisoners' due-process rights are of less significance than determinations of guilt. That value judgment overlooks the purpose of affording due-process protections in prison-disciplinary proceedings, which is to assure that the hearings are fairly conducted and that the inmates have adequate opportunity to assert a defense.

I would reverse the judgment below and remand for a new disciplinary hearing.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK and GARIBALDI—4.

*For reversal and remandment*—Justice STEIN—1.