Pigott, J.
(concurring). I agree with the majority’s conclusion and with its analysis of the legal issues defendant has raised. In my view, however, the District Attorney’s direct and unregulated access to all of an inmate’s non-privileged telephone conversations deserves further mention. The current arrangement between the Department of Correction and the District Attorney’s office creates a serious potential for abuse and may undermine the constitutional rights of defendants who are financially unable to make bail. Something needs to change.
Pretrial detainees like defendant are presumed innocent until proved guilty. Because they have not yet been convicted of a crime, the State’s only legitimate purpose for detaining them is to assure their presence at trial, and their liberty may not be restrained more than necessary to accomplish that result (see Cooper v Morin, 49 NY2d 69, 81 [1979], cert denied sub nom. Lombard v Cooper, 446 US 984 [1980]; 4 William Blackstone, Commentaries on the Laws of England at 300 [explaining that pretrial detention is authorized “only for safe custody, and not for punishment”]).
The Department of Correction also has a legitimate interest in maintaining the safety and security of its detention facilities (see Campbell v McGruder, 580 F2d 521, 529 [DC Cir 1978]; *209 Cooper, 49 NY2d at 81), and thus has “broad latitude to adopt rules that protect the safety of inmates and corrections personnel and prevent escape or unlawful entry” (United States v Cohen, 796 F2d 20, 22 [2d Cir 1986], citing Bell v Wolfish, 441 US 520, 547 [1979]). To that end and for that limited purpose, the Rules of the City of New York authorize the Department to record and monitor all inmates’ telephone conversations with the exception of those placed to attorneys, physicians and clergy (see 40 RCNY 1-10 [h]). Prisoners are clearly and repeatedly cautioned that “telephone conversations are subject to electronic recording and/or monitoring in accordance with Departmental policy” and that the “use of institutional telephones constitutes consent to this recording and/or monitoring.”
The Department’s purpose in recording and monitoring these conversations is limited to ensuring the safety and security of its facilities, not harvesting evidence for the prosecution. Yet the People admit that, unknown to defendants, they routinely obtain and review such recordings before trial, in search of anything that can be used against them. The People justify this practice principally on the basis of consent: because the calls were recorded by the Department, and the detainee knew the Department could record and/or monitor the calls, he has no expectation of privacy in the conversations and is not entitled to shield them from the prosecution. But there is “a major distinction between prison authorities having access to prisoners’ phone calls for purposes of prison security and discipline, and the prosecutors of that pretrial prisoner having the same access for purposes of gaining advance knowledge of the pretrial prisoner’s trial strategy and potential witnesses,” particularly in situations (not present in this case) in which a prisoner is representing himself pro se (United States v Mitan, 2009 WL 3081727, *4, 2009 US Dist LEXIS 88886, *11 [ED Pa, Sept. 25, 2009, Nos. 08-760-1, 08-760-2]).
It has long been known that a defendant at liberty pending trial already stands a better chance of not being convicted or, if convicted, of not receiving a prison sentence, than those who are detained before trial, even after controlling for factors such as prior criminal record, seriousness of the charge, bail amount, type of counsel, community ties and employment status (see Barker v Wingo, 407 US 514, 533 n 35 [1972]; McGruder, 580 F2d at 531, citing Ares, Rankin & Sturz, The Manhattan Bail Project: An Interim Report on the Use of Pre-Trial Parole, 38 NYU L Rev 67, 86 [1963], and Rankin, The Effect of Pretrial *210 Detention, 39 NYU L Rev 641, 665 [1964]). One study showed that 64% of those continuously in jail from arraignment to adjudication were sentenced to prison, while only 17% of defendants who made bail received prison sentences (McGinnis v Royster, 410 US 263, 282-283 [1973, Douglas, J., dissenting], citing Vera Institute of Justice, Programs in Criminal Justice Reform, Ten-Year Report 1961-1971 [1972]). Another study found that 77% of defendants who were detained before trial were eventually convicted of some offense, compared to 55% of those released pending disposition (Andrew D. Leipold, How the Pretrial Process Contributes to Wrongful Convictions, 42 Am Crim L Rev 1123, 1131 n 27 [2005] [citing a 2000 study of the Bureau of Justice Statistics]).
One explanation for this inequity is “(t)he limitations imposed by incarceration” (McGruder, 580 F2d at 532). Pretrial detention hampers a defendant’s preparation of his defense by limiting his “ability to gather evidence [and] contact witnesses” during the most critical period of the proceedings {Barker, 407 US at 533; see also Powell v Alabama, 287 US 45, 57 [1932]). During that important pretrial period, defendant, either acting pro se or with the assistance of counsel, negotiates for dismissal or reduction of the charges, engages in motion practice, considers offers to plead guilty and decides which witnesses to call (see United States v Vitta, 653 F Supp 320, 337 [ED NY 1986], citing Wald, Pretrial Detention and Ultimate Freedom: A Statistical Study, 39 NYU L Rev 631, 633 [1964]). Indeed, the defendant “is often the key source of factual details on which to base pretrial motions and negotiations” (id.). A defendant free on bail or on his own recognizance can therefore make good use of that liberty by consulting and participating fully with counsel in time-consuming preparations for trial, including tracking down witnesses and evidentiary leads (id.).
The detained suspect cannot make these same preparations because he lacks a similar ability to contact witnesses and gather evidence. Moreover, any telephone conversations with family members or potential witnesses are now turned over to the prosecution for it to review. Not only do prosecutors obtain critical information about key defense witnesses and possible defenses well before those materials would have been disclosed, but they can also use innocuous details to their advantage in negotiating plea deals, for example, by combing through a detainee’s recorded conversations for information about his financial limitations or family obligations. The amici suggest *211 that even more unsavory situations exist, such as a prosecutor persuading a defendant’s wife to testify against him after confronting her with the defendant’s recorded conversations revealing an extramarital affair. Although the prosecutor in this case did not engage in any of these more troubling actions and defense counsel did not move for a mistrial or raise a claim of prosecutorial misconduct, it is easy to see the potential for abuse.
And what is the alternative, the People say? Don’t discuss any details about your case over the telephone except with your attorney; don’t ask your spouse to look into a particular witness’s availability or get medical records in preparation for your defense; don’t call your friend to ask for help tracking down necessary evidence; essentially, don’t talk to anyone other than your attorney about anything related to your case unless you want the prosecutor to know about it. This is not a viable alternative, at least not one that would enable a defendant adequately to “prepare [a] defense . . . without knowledge of the prosecutors” (Mitan, 2009 WL 3081727, *3, 2009 US Dist LEXIS 88886, *8).
Faced with the possibility that anything a defendant says over the phone can (and will) be used against him at trial, the defendant’s only real choice is not to use the phones at all. I cannot sanction that result. Trial courts must be vigilant to protect the detainees’ constitutional rights, and consideration should be given to placing limitations on the prosecutor’s ability to obtain these recordings. Although the recordings in this case were obtained by the prosecutor through a subpoena duces tecum and reviewed by Supreme Court prior to disclosure, in other cases the People’s unfettered access can prejudice a defendant and impair his ability to prepare a defense, which “skews the fairness of the entire system” (Barker, 407 US at 532).
Chief Judge DiFiore and Judges Pigott, Abdus-Salaam, Stein, Fahey and Garcia concur; Judge Pigott in a separate concurring opinion.
Order affirmed.