**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3583-16T3


RIGOBERTO MEJIA,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted July 9, 2018 — Decided July 23, 2018

Before Judges Yannotti and Haas.

On appeal from the New Jersey Department of
Corrections.

Rigoberto Mejia, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney
for respondent (Melissa Dutton Schaffer,
Assistant Attorney General, of counsel; Kai
W. Marshall-Otto, Deputy Attorney General, on
the brief).

PER CURIAM

    Rigoberto Mejia is an inmate at New Jersey State Prison

(NJSP), where he is serving a life sentence, with forty years of

parole ineligibility, as a result of his convictions for murder, robbery, and other offenses. Mejia appeals from a final determination of the Assistant Superintendent of NJSP, finding him guilty of committing prohibited acts *.102, attempting or planning escape, and *.704, perpetrating frauds, deceptions, confidence games, riots, or escape plots (frauds or deceptions) contrary to N.J.A.C. 10A:4-4.1.[1] We affirm.

On January 31, 2017, prison officials received information that Mejia was in possession of materials deemed to pose a threat to the security of the institution. Investigators from the Special Investigations Division (SID) conducted a search of Mejia's cell and discovered a hand-drawn diagram of what appeared to be a cell door complete with measurements. The SID investigator noted that the drawing appeared to be of a cell door from units in the West Compound, where Mejia was housed from January 2011 through February 2015.

The following day, the investigator attempted to question Mejia about the drawing, but he indicated that he did not understand the English language. The investigator reviewed Mejia's past grievances and the interviews conducted regarding those

---

[1] "Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a).

grievances, and determined that Mejia did, in fact, understand English. The investigator determined that by misrepresenting his ability to understand English, Mejia had attempted to circumvent the investigation.

On February 1, 2017, the New Jersey Department of Corrections (NJDOC) charged Mejia with prohibited act *.102, attempting or planning escape. He was served with a copy of the charge the following day. On February 2, 2017, the NJDOC also charged Mejia with prohibited act *.704, perpetrating frauds or deceptions, because he had misrepresented his ability to understand English. On February 3, 2017, Mejia was served with a copy of the *.704 charge. Mejia pled not guilty to both charges.

A hearing first was scheduled for February 3, 2017. However, the hearing was adjourned several times to obtain additional information, translate a statement, consider Mejia's request for a polygraph, allow Mejia an opportunity for confrontation, and prepare a written report. The hearing concluded on February 23, 2017.

The hearing officer found Mejia guilty of committing prohibited act *.102. The hearing officer noted that Mejia had denied guilt, claiming he never planned an escape. The hearing officer determined, however, that there was sufficient evidence to support the charge. The hearing officer noted the serious nature

3

of the charge, pointing out that the drawing found in Mejia's cell included precise measurements of a cell door and posed a possible threat to the security of NJSP if possessed by inmates.

The hearing officer also found Mejia guilty of committing prohibited act *.704. The hearing officer noted that Mejia had denied guilt and stated throughout the hearing that he does not understand English. However, based on institutional reports, the hearing officer found that Mejia had deliberately misrepresented his ability to comprehend English during his interview with the SID investigator.

For the *.102 charge, the hearing officer imposed the following sanctions: 180 days of administrative segregation, the loss of 365 days of commutation time, and the loss of thirty days of recreational privileges. The hearing officer imposed the same sanctions for the *.704 charge.

On February 26, 2017, Mejia filed an administrative appeal. On March 9, 2017, David Richards, the Assistant Superintendent of NJSP, issued a final decision, concluding that the proceedings had been conducted in compliance with the applicable provisions of the Administrative Code pertaining to inmate discipline, and there was sufficient evidence to support the hearing officer's decision. The Assistant Superintendent rejected Mejia's request to suspend or downgrade the sanctions. Mejia's appeal to this court followed.

On appeal, Mejia argues that the hearing officer did not conduct the proceeding in accordance with the Administrative Code and violated his right to due process. His arguments are entirely without merit.

Judicial review of final decisions of an administrative agency is "severely limited." George Harms Constr. Co. v. N.J. Turnpike Auth., 137 N.J. 8, 27 (1994) (citing Gloucester Cty. Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390 (1983)). The court can "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." Ibid.

Where, as here, the court reviews a final decision of the NJDOC in a prisoner disciplinary matter, we consider whether there is substantial evidence in the record to support the NJDOC's decision that the inmate committed the prohibited act and whether, in making that decision, the NJDOC followed the regulations governing the disciplinary process, which were adopted to afford the inmates procedural due process. McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 220-22 (1995).

Mejia first argues that there is insufficient evidence to support the hearing officer's finding that he committed prohibited act *.102, attempting or planning escape. Mejia does not dispute

that during a search of his cell, the SID investigators found a hand—drawn diagram of what appeared to be a cell door, complete with measurements. The drawing depicted the doors to cells in units of the prison where Mejia previously had been housed. Mejia provided a written explanation for his drawing. Among other things, he claimed he made the drawing because of certain sexual fantasies.

The hearing officer rejected Mejia's explanation, finding that the drawing could be used in an escape or attempted escape. We note that in answering Mejia's confrontation questions, SID Investigator Dalrymple stated that a drawing depicting the measurements of a security door in a prison, especially one that is a maximum-security institution, raises serious security concerns. We conclude there is substantial evidence supporting the *.102 charge.

Mejia also argues there was insufficient evidence to support the hearing officer's finding that he committed prohibited act *.704, perpetrating frauds or deceptions. Here, the NJDOC alleged that Mejia refused to answer questions in the investigation, claiming he did not understand English. The hearing officer accepted the staff reports and determined that Mejia had misrepresented his ability to understand English. We conclude there is sufficient evidence to support the charge under *.704.

Mejia further argues he was denied his right to confront Dalrymple. The record shows that Mejia initially presented five written questions for purposes of confrontation or cross-examination of Dalrymple. The hearing officer disallowed three of those questions.

The first of those questions was, "How long have you been working for the [SID]?" The second question was, "During [the time you have worked in the SID], how many cases, not counting this one, [have] you worked [on] dealing with 'Attempt to escape OR Planning an escape?" The third question was, "Is it true that all cell doors are secured by a dead bolt lock and breaker bar which can only be opened by [an] officer?" The hearing officer disallowed these questions because they were "deemed irrelevant."

In a disciplinary hearing, an inmate has a limited right to confront and cross-examine witnesses when "necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved." McDonald, 139 N.J. at 198 (quoting Avant v. Clifford, 67 N.J. 496, 530 (1975)). However, the Administrative Code expressly allows a hearing officer to disallow any question that is irrelevant. N.J.A.C. 10A:4-9.14(d)(2).

Here, the hearing officer properly exercised the authority under the regulation. The questions sought information that was not relevant to whether Mejia was guilty of committing the

prohibited acts charged. The questions also had no bearing on any credibility issue. The hearing officer's decision to disallow the three questions was not a mistaken exercise of discretion.

Mejia also contends the hearing was not held within the time required by N.J.A.C. 10A:4-9.8(c). The regulation provides that an inmate shall receive a hearing on a disciplinary charge within three days after placement in "Prehearing Disciplinary Housing [PDH]," including weekends and holidays, "unless there are exceptional circumstances, unavoidable delays, or reasonable postponements." Ibid.

The record shows that Mejia was placed in PDH on February 1, 2018. The hearing was not held within three days thereafter. However, the hearing was postponed to obtain additional information, translate a statement, consider Mejia's request for a polygraph, allow time for confrontation or cross-examination, and prepare a report. The postponements were "reasonable." Therefore, the hearing was held within the time permitted by N.J.A.C. 10A:4-9.8(c).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION