NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0717-15T3

THOMAS CLAUSO,

 Appellant,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS,

 Respondent.
__________________________________

 Telephonically Argued January 5, 2017 –
 Decided March 14, 2017

 Before Judges Ostrer and Leone.

 On appeal from the New Jersey Department of
 Corrections.

 Thomas Clauso, appellant, argued the cause pro
 se.

 Kevin J. Dronson, Deputy Attorney General,
 argued the cause for respondent (Christopher
 S. Porrino, Attorney General, attorney; Lisa
 A. Puglisi, Assistant Attorney General, of
 counsel; Mr. Dronson, on the brief).

PER CURIAM

 Thomas Clauso, at relevant times a prisoner at East Jersey

State Prison, appeals from a Department of Corrections
(Department) disciplinary decision. A hearing officer found that

Clauso committed prohibited act *.005, "threatening another with

bodily harm or with any offense against his or her person or his

or her property." N.J.A.C. 10A:4-4.1(a). The Administrator upheld

the decision after an administrative appeal. We affirm.

 Clauso disclosed the threat in a prison-monitored telephone

conversation with his wife on April 7, 2015. The target was a

member of the New Jersey Judiciary, who had been a prosecutor in

an earlier case involving Clauso. Clauso provided context for the

threat in his brief on appeal. In 1988, Clauso was sentenced to

life in prison, with a twenty-five-year mandatory minimum term.1

He alleged that the former prosecutor had links to the judge, now

deceased, who presided over his trial and sentenced him. He

contended the trial judge should have recused himself. In the

recorded conversation, Clauso told his wife that he had written a

threatening letter to a judge, apparently referring to the former

prosecutor:

 Wife: What happened?

1
 The record states the life sentence was imposed for criminal
attempt, N.J.S.A. 2C:5-1, to violate an "uncoded chapter" of law.
He was simultaneously sentenced to five years for possessing a
weapon, N.J.S.A. 2C:39-5; ten years for doing so with an unlawful
purpose, N.J.S.A. 2C:39-4; and five years for aggravated assault,
N.J.S.A. 2C:12-1.

 2 A-0717-15T3
 Clauso: I mailed that S___2

 Wife: Do you think you are going to threaten
 an attorney?

 Clauso: I ain't threatening no attorney. I'm
 threatening the judge.

Clauso then stated he had written to the judge "on and off for the

last four months." Using coarse language, he said he did not care

"what none of you . . . out there, none of you, do." His

threatening comments continued:

 Clauso: I ain't living on my knees no more. I
 ain't going to worry about this S___

 Wife: Do your paralegals agree with this

 Clauso: These MF don't want to admit they are
 wrong. You have to put fire under them.

 Wife: What are you saying to these people

 Clauso: I told you. I already wrote it. I
 told him flat out. This MF____ had no right
 hearing my case. I said you're not
 untouchable M_F_. Just like you don't give a
 F___ about me or my family, my children,
 grandchildren, nobody. I don't give a F___
 about you or yours. Keep it the F__ up, Keep
 F---g with me. I said I told you Judge for
 the last G_D F____g time. I got people . . .
 I can call to come see your Punk A___. Yeah
 oh yeah. I don't give a F___ about a
 threatening charge

 Clauso then told his wife that he expected he would be

released by the summer, his sentence could not be extended for a

2
 The redactions are in the transcript.

 3 A-0717-15T3
threatening charge, and he could "handle this in lock up." His

wife told him he was making things worse. Clauso replied it did

not matter, because he already mailed the letter. His wife said,

"You can't threaten people[.]" Clauso replied, "So what? They

are lucky I ain't out and get a gun. If I had a gun I would kill

them all." Later in the conversation, Clauso said, "NO one is

untouchable. Everyone is touchable." He added, "I'll take the

stupid M--F--r out and the other one will say Jesus Christ, he

meant what he said. The State Police will come and I will tell

them to their face, I'll have you F------g Whacked!"

 A disciplinary report issued three days later alleged a

violation of *.005. It stated, "As a result of monitoring inmate

Clauso's telephone conversations, it was discovered that he has

threatened a life" of the judge "numerous times during the 4-7-

2015 conversations." Clauso pleaded not guilty. He requested a

postponement at the first hearing date, which was granted. Clauso

then went on a hunger strike and was hospitalized. As a result,

the adjudicatory hearing was delayed until August 2015, when the

facility staff determined he was medically and psychologically fit

to attend.

 Clauso refused to attend the August hearing. He told the

officers who visited his cell to escort him to the hearing, "I'm

not participating in nothing. I ain't got to say nothing to you.

 4 A-0717-15T3
Get out of here." The hearing officer considered a statement by

Clauso in June 2015, "I am not saying I didn't make threats. They

are going to let me go one way or another." The hearing officer

also identified a confidential mental health evaluation, which

cleared Clauso for the hearing. The items of evidence introduced

against Clauso included an audio tape, which is not in the

appellate record; the transcript of excerpts of Clauso's

conversation with his wife, which we have quoted; various shift

reports; and a record of the multiple postponements because of

Clauso's hunger strike and medical monitoring. Also considered

was a provocative March 24, 2015 letter Clauso wrote to a federal

judge.3

3
 The United States Marshal's report of the letter apparently
preceded the monitoring of Clauso's telephone conversations. We
gather the federal judge was presiding over an application by
Clauso. Among other things, Clauso wrote:

 [D]o you want me to threaten to kill someone?
 or Blow something up so I can get a hearing?

 . . . .

 Are all of you Stupid? Nuts[?] [S]cared?
 [W]hat is it?

 . . . .

 Your Honor if you['re] scared tell me I['ll]
 send some solidures [sic] to protect your
 Honor.

 5 A-0717-15T3
 The hearing officer upheld the charge, finding that Clauso

"wrote a threatening letter to judges."4 The hearing officer then

referred at length to the quoted statements Clauso made to his

wife. The officer noted that Clauso had "stated . . . 'I am not

saying I didn't make threats.[']" Clauso's counsel substitute

acknowledged on the adjudication form that Clauso declined the

opportunity to call or confront witnesses.

 The hearing officer imposed 365 days of administrative

segregation; 365 days loss of commutation time; and fifteen days

loss of recreation privileges. Clauso filed an administrative

appeal. In a separate filing, a paralegal wrote that Clauso's

conversation was "never intended to constitute a threat." However,

Clauso maintained that he "did not consent to anyone doing anything

for [him] appeals/representation/nothing."

 Judge stop this fucking around set me free if
 your Honor wants me to threaten someone or
 blow something up that way we can testify at
 a trial please advise me what to do. I can
 never do these things. So please figure out
 what you want me to say.
4
 The hearing officer's decision does not clearly state whether
the letter to the federal judge, a copy of which is included in
the record, violated *.005, or whether the adjudication was based
solely on the letter Clauso referenced in his monitored
conversation, which was apparently sent to the state judge.
Notably, the initial disciplinary report's "description of alleged
infraction" referred only to Clauso's telephone conversation.

 6 A-0717-15T3
 Clauso argued in his administrative appeal that he did not

receive a fair opportunity to attend the hearing. He alleged that

on the hearing day, a sergeant, paralegals and the hearing officer

crowded into his "observation cell," where he had been sleeping

under his bed, to shield himself from the light that was on twenty-

four hours a day. He contended he told them he had just awakened

and had to wash his face and use the toilet. He claimed the

hearing officer then left and, the next day, he received the

hearing officer's decision. He asserted he was denied a hearing,

his paralegal failed to present a defense, and he was deprived due

process.

 The Administrator upheld the decision, explaining that the

decision was based on substantial evidence; there was procedural

due process; and the hearing complied with guidelines. The

Administrator reduced the administrative segregation sanction to

time served.5 All "other" sanctions were to be enforced.

 On appeal, Clauso presents the following points for our

consideration:

 THE STATEMENT BY APPELLA[NT] WERE MADE OUT OF
 FRUSTRATION AND NOT FOR THE PURPOSE TO HARM
 ANYONE OR TO CAUSE HARM.

5
 The disposition sheet stated, "Ad Seg sanction reduced to CTS."

 7 A-0717-15T3
 POINT I

 THE HEARING OFFICER'S DECISION FINDING
 APPELLANT GUILTY OF VIOLATING PRISON RULES WAS
 ARBITRARY AND CA[]PRICIOUS AND NOT BASED UPON
 SUBSTANTIAL EVIDENCE AS REQUIRED IN N.J.A.C.
 10A:4-9.15(a).

 POINT II

 APPELLANT WAS PLACED IN 24 HOUR ISOLATION FOR
 146 DAYS IN VIOLATION OF HIS 8TH AMENDMENT
 RIGHTS TO BE FREE FROM CRUEL AND UNUSUAL
 PUNISHMENT INFLICTED.

 POINT III

 THE DEPARTMENT OF CORRECTION'S FINDINGS,
 UPHOLDING INMATE DISCIPLINARY DECISION WAS
 INADEQUATE, AND CONTRARY TO ITS DECISION IN
 BLACKWELL V. DEPT. OF CORRECTIONS, 348 N.J.
 SUPER. 117 (APP. DIV. 2002).

 Our standard of review is well-settled. We will disturb the

Department's disciplinary decision "only if it is arbitrary,

capricious or unreasonable[,]" or unsupported "by substantial

credible evidence in the record as a whole." Henry v. Rahway

State Prison, 81 N.J. 571, 579-80 (1980); see also Jenkins v. N.J.

Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). In

determining whether an agency action is arbitrary, capricious, or

unreasonable, we consider whether: (1) the agency followed the

law; (2) substantial evidence supports the findings; and (3) the

agency "clearly erred" in applying the "legislative policies to

the facts." In re Carter, 191 N.J. 474, 482-83 (2007) (quoting

 8 A-0717-15T3
Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)). Although our review

is not perfunctory, Figueroa v. N.J. Dep't of Corr., 414 N.J.

Super. 186, 191 (App. Div. 2010), we "may not substitute [our] own

judgment for the agency's, even though [we] might have reached a

different result." In re Stallworth, 208 N.J. 182, 194 (2011)

(internal quotation marks and citation omitted). "Prisons are

dangerous places, and the courts must afford appropriate deference

and flexibility to administrators trying to manage this volatile

environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576,

584 (App. Div. 1999).

 On the other hand, interpreting DOC regulations is a purely

legal matter, which we consider de novo. Klawitter v. City of

Trenton, 395 N.J. Super. 302, 318 (App. Div. 2007). "An appellate

tribunal is . . . in no way bound by the agency's . . .

determination of a strictly legal issue." Mayflower Sec. Co. v.

Bureau of Sec., 64 N.J. 85, 93 (1973).

 Applying these principles, we discern no merit to Clauso's

challenge to the Administrator's decision that affirmed the

hearing officer's finding of a *.005 infraction. Clauso contends

his statements were borne out of frustration, not meant as threats,

and he did not intend to hurt anyone. But his subjective intent

does not matter. An inmate charged with a *.005 violation is

guilty if, "on the basis of an objective analysis[,] . . . the

 9 A-0717-15T3
remark conveys a basis for fear." Jacobs v. Stephens, 139 N.J.

212, 222 (1995). Jacobs held that an inmate's statement to an

officer "'to get the fuck out of [my] face' during a 'heated'

discussion," was sufficient, on its own, to find that a threat had

been made. Id. at 223. The Department also considered evidence

of additional menacing statements in support of its finding. Id.

at 223-24.

 It also is of no moment that the target of Clauso's threat

was not a party to the monitored conversation. The monitored

conversation was significant because Clauso admitted he sent a

threatening letter to the judge and he described what he wrote,

which conveyed a threat and basis for fear. It also was not

essential for the Department to call the letter's recipient as a

witness. Clauso's own admissions sufficed to prove he conveyed

the threats.6

 We also reject Clauso's contention that the hearing process

deprived him of his due process rights. Prisoners are afforded

an array of procedural rights, albeit not as extensive as those

granted to a defendant in a criminal prosecution. See Jenkins v.

Fauver, 108 N.J. 239, 248-49 (1987); Avant v. Clifford, 67 N.J.

6
 We need not address whether a *.005 violation may consist solely
of conveying to one person the threat to harm another, without
directing the listener to pass the threat along.

 10 A-0717-15T3
496, 525-47 (1975); N.J.A.C. 10A:4-9.1 to -9.28. Here, there was

sufficient evidence in the record — although disputed — to

establish that Clauso was offered a fair opportunity to attend the

hearing, and to present and confront witnesses. See N.J.A.C.

10A:4-9.11(a) (allowing in absentia hearings "if the inmate

refuses to appear at the hearing"); N.J.A.C. 10A:4-9.14

(discussing the right to present and confront witnesses).

Additionally, the decisions of the hearing officer and

Administrator did not lack essential detail. See N.J.A.C. 10A:4-

9.24 (outlining components of hearing officer decision); N.J.A.C.

10A:4-11.5 (discussing an Administrator's review of an appeal).

 Finally, we do not address Clauso's contention that the

Department's decision to place him in twenty-four-hour isolation

for 146 days, apparently in advance of the August 2015 hearing,

constituted cruel and unusual punishment. The issue of the

conditions of Clauso's confinement is not properly before us in

his appeal from the Administrator's decision.

 Affirmed.

 11 A-0717-15T3