**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5166-18T3

YUSUF IBRAHIM,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted October 14, 2020 – Decided November 4, 2020

Before Judges Yannotti and Haas.

On appeal from the New Jersey Department of Corrections.

Yusuf Ibrahim, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Erica R. Heyer, Deputy Attorney General, on the brief).

PER CURIAM

Yusuf Ibrahim, an inmate in the State's correctional system, appeals from a final determination of the New Jersey Department of Corrections (NJDOC), which found that he committed certain prohibited acts and imposed disciplinary sanctions. We affirm.

In May 2019, Ibrahim was incarcerated at New Jersey State Prison (NJSP), where he is serving a life sentence for murder and other offenses. On May 17, 2019, Senior Corrections Officer C. Zetty was working in a booth in Unit 4B. Ibrahim was in the law library. The officer observed Ibrahim "digging" into the waistband of his pants.

Officer Zetty reported that an inmate named Chulozinski, who was in a nearby kiosk, extended his right hand toward Ibrahim. The officer stated that he knocked on the window of the booth to get the inmates' attention. The officer reported that Chulozinski pulled his hand back into the kiosk, and Ibrahim stopped "digging" into his waistband.

Officer P. Balon escorted Ibrahim to a cell for a strip search. In his report, Officer Balon stated that after Ibrahim removed his pants, thermals, and boxer shorts, he noticed Ibrahim's right hand was partially closed. He ordered Ibrahim to open his hand. The officer reported that Ibrahim placed what appeared to be a folded piece of white paper into his mouth. The officer ordered Ibrahim to

2

hand over what he placed in his mouth. Ibrahim swallowed it. Officer Balon completed the search and found small pouches that had been sewn into the waistbands of Ibrahim's pants and boxers. He confiscated the pants and boxers and Ibrahim was secured in his cell.

Officer L. Williams assisted in escorting Ibrahim to a cell for the strip search. In the report, the officer stated observing the piece of folded paper in Ibrahim's right hand. Officer Williams stated seeing Ibrahim place the paper in his mouth and swallow it.

Ibrahim was charged with committing prohibited acts .210, possession of anything not authorized; and .256, refusing to obey an order, in violation of N.J.A.C. 10A:4-4.1(a). On May 18, 2019, Sergeant T. DeJesus served the charges on Ibrahim, investigated the charges, found they had merit, and referred the matter to a hearing officer for further action. Disciplinary Hearing Officer (DHO) Cortes recused herself due to a potential conflict of interest.

DHO J. Falvey assumed responsibility for the hearing. DHO Falvey began the hearing on May 24, 2019. The DHO modified the .256 charge to a *.708 charge of refusing to submit to a search.[1] Ibrahim requested and was granted

---

[1] We note that "[p]rohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . ." N.J.A.C. 10A:4-4.1(a).

the assistance of a counsel substitute. He pleaded "no plea" to the charges. The DHO granted Ibrahim's request to postpone the hearing so that he could prepare his defense to the modified charge. The hearing concluded on May 30, 2019.

Ibrahim requested a new DHO. He stated that he felt that DHO Falvey was retaliating against him because he had filed a lawsuit against DHO Cortes, who was his "subordinate." Ibrahim asserted that the reporting officer had taken time to deliberate on the charge and the charge should not be modified. He stated that inmates are permitted to pass items, and the officers "never searched the other guy" and "[t]hey never charged him."

Ibrahim also stated that he had been in a "dry cell" for four days. He took a urine test and "everything came back negative." Ibrahim said, "everybody has pockets sewn into their clothes." He claimed Officer Zetty "spread information" that he "wrote up another officer." He stated that he wanted to get moved off the unit for fear of retaliation. He said he "did try to pass [inmate named Chulozinski] something. It was something I printed. That's why I'm pleading no contest."

Ibrahim's counsel substitute argued that Ibrahim did not refuse a search. He noted that the officers had reported that they completed the search. Ibrahim

was offered and declined the opportunity to call witnesses and the opportunity to confront or cross-examine adverse witnesses.

DHO Falvey found Ibrahim guilty on both charges. The DHO stated that, in reaching his decision, he had relied upon the staff reports, a video recording, and Ibrahim's statement.

In his adjudication report concerning the .210 charge, the DHO wrote that Ibrahim had admitted altering his clothing and it was irrelevant that other inmates had not been charged for such conduct. The DHO stated that Ibrahim had engaged in suspicious behavior and his clothing had been altered.

The DHO also stated that the fact that Ibrahim had destroyed the item "suggests he was using secret pockets to conceal items from staff." The DHO imposed the following sanctions: thirty days in administrative segregation, and the loss of sixty days of commutation time. Both sanctions were suspended for sixty days.

In the adjudication report on the *.708 charge, the DHO wrote that Ibrahim had admitted he did not allow staff to inspect the paper in his hand, and he destroyed the paper before it could be inspected. The DHO rejected Ibrahim's claim that the search had been completed. He noted that the video shows Ibrahim passing or attempting to pass the item to the other inmate. The DHO

A-5166-18T3

found that Ibrahim "thwarted the search by destroying the item staff wished to search upon locating [the] paper."

DHO Falvey stated that *.708 was the more appropriate charge because Ibrahim "consciously disregarded an order during a search and destroyed the item in front of staff. This is a serious potential security breach." The DHO noted that he had denied Ibrahim's request for a new hearing officer. He noted that he is not assigned to NJSP and he had not been named in any lawsuit.

The DHO imposed the following sanctions: 150 days in administrative segregation; the loss of 150 days of commutation time; the loss of thirty days of "J-pay"; and the loss of thirty days of recreational privileges.

Regarding the sanctions, the DHO noted that Ibrahim had been found guilty of a serious offense and has a poor disciplinary history. He said this was Ibrahim's fourth asterisk charge since September 2018. The DHO said he had considered Ibrahim's mental health report and did not impose the maximum sanctions permitted.

Ibrahim filed an administrative appeal. On June 12, 2019, NJSP Assistant Superintendent Emrich upheld the DHO's decisions. This appeal followed.

On appeal, Ibrahim argues the DHO could not be impartial after he took on a "prosecutorial role" by upgrading the .256 charge to a *.708 charge. He

6

claims the unit officer displayed retaliatory behavior. He further argues that the evidence does not support either charge.

The scope of our review of a final decision of an administrative agency is "severely limited." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994) (citing Gloucester Cty. Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390 (1983)). We can "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." Ibid.

In an appeal from a final decision of the NJDOC in a prisoner disciplinary matter, we consider whether there is substantial credible evidence in the record to support the NJDOC's decision that the prisoner committed the prohibited act. Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). We also must consider whether, in making its decision, the NJDOC followed the regulations governing prisoner disciplinary matters, which were adopted to afford prisoners the right to due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 220-22 (1995).

We are convinced there is sufficient credible evidence in the record to support the NJDOC's decision that Ibrahim committed prohibited acts .210 and

7

*.708, in violation of N.J.A.C. 10A:4-4.1(a). Here, the record shows that an officer reported seeing Ibrahim "digging" into the waistband of his pants and attempting to pass an item to another inmate. During the ensuing strip search, the officers noticed that he was holding a piece of paper in his hand. The officers ordered him to turn over the paper. Ibrahim refused, placed it into his mouth, and swallowed it. The officers confiscated Ibrahim's pants and boxer shorts. They found secret pockets in the waistbands.

We are convinced the officers' reports provided sufficient evidence for the DHO's conclusion that Ibrahim possessed something he was not authorized to possess or retain and refused to submit to the search. We note that Ibrahim essentially conceded that he tried to pass the piece of paper to another inmate, refused to turn over the paper during the strip search, and swallowed it. He also admitted there were small pouches sewn in his pants and boxer shorts. Moreover, during the hearing, Ibrahim presented no witnesses, and declined the opportunity to cross-examine or confront any adverse witness.

On appeal, Ibrahim argues that he did not commit prohibited act *.708 because the officers stated in their reports that the search had been "completed." Although the officers stated in their reports that they "completed" the search, the DHO found they were not able to inspect the piece of paper Ibrahim had in

8

his hand because he destroyed it.  Ibrahim's argument that the officers' reports do not support the DHO's finding of guilt on the *.708 charge is entirely without merit.

Ibrahim further argues that Officer Zetty displayed retaliatory behavior by charging him with passing an item to another inmate, which he claims is a common practice.  He asserts that when he attempted to pass "legal notes" to another inmate, Officer Zetty "seized this opportunity" to charge him with a prohibited act that the officer himself engages in.

Ibrahim contends Officer Zetty charged him because they previously exchanged words about "writing up officers and filing lawsuits against prison staff."  Ibrahim's contention that the officer displayed retaliatory behavior by charging him with the disciplinary infractions is not supported by any evidence in the record.

Ibrahim also argues that DHO Falvey engaged in retaliatory conduct by upgrading the .256 charge to a *.708 charge.  He contends he has a pending lawsuit against DHO Cortes, who is DHO Falvey's subordinate.  As noted, DHO Cortes recused herself from conducting the hearing in this matter due to a potential conflict of interest.  Ibrahim claims DHO Falvey upgraded the .256 charge in retaliation for bringing a lawsuit against his subordinate.

These contentions lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We note, however, that there is no evidence in the record to support Ibrahim's contention that DHO Falvey engaged in improper retaliatory behavior by upgrading the charge. In his adjudication report, DHO Falvey stated that he was assigned to NJSP and he had not been named in any lawsuit.

Ibrahim further argues that DHO Falvey could not be impartial in the matter. He asserts the DHO "took on a prosecutorial role" by upgrading the .256 charge to a *.708 charge. He contends there was no factual basis for the *.708 charge. Ibrahim asserts he only refused to obey an order concerning "a piece of paper." He also asserts he was placed in a "dry cell" for four days and was subjected to tests for contraband, all of which were negative.

These contentions also are without merit. A DHO has authority under N.J.A.C. 10A:4-9.16 to modify a disciplinary charge when it is apparent the inmate has been charged with an incorrect prohibited act. Here, the DHO explained that he upgraded the charge because Ibrahim disregarded an order during a search and destroyed the item he was holding in front of staff. The record does not support Ibrahim's contention that the modification of the charge was an act of retaliation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5166-18T3