**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2547-19

GUILIO MESADIEU,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted March 9, 2021 – Decided May 19, 2021

Before Judges Fisher, Moynihan, and Gummer.

On appeal from the New Jersey Department of Corrections.

Guilio Mesadieu, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Chanell Branch, Deputy Attorney General, on the brief).

PER CURIAM

While incarcerated, Guilio Mesadieu was accused of returning a damaged floppy disk to the law library and was charged initially with committing prohibited act *.009. He appeals a final decision of the New Jersey Department of Corrections (NJDOC), finding he committed prohibited act .152. Because the record lacks clarity regarding the change in charge, the disciplinary hearing officer's decision, and the administrative appeal of the decision, we reverse and remand for a new disciplinary hearing.

On November 19, 2019, Mesadieu requested and received from law library staff a floppy disk assigned to him. According to instructional technician Dwayne Parker, the disk was "fully operational and intact" when it was provided to Mesadieu. When Mesadieu returned the disk, Parker noticed the metal protective covering on the disk was missing, reported it to Sargent Fronczek, who was an officer in Mesadieu's unit, and submitted a disciplinary report, indicating the "infraction" took place at 1:15 p.m. Mesadieu told Fronczek he had returned the disk with the metal covering intact. Mesadieu, his cell, and the library were searched, and the covering was not found.

A-2547-19

The disciplinary report was provided to Mesadieu on November 20, 2019, at 7:10 a.m. Mesadieu was charged with prohibited act *.009[1] in violation of N.J.A.C. 10A:4-4.1(a)(1)(v), which involves:

> misuse, possession, distribution, sale, or intent to distribute or sell, an electronic communication device, equipment, or peripheral that is capable of transmitting, receiving, or storing data and/or electronically transmitting a message, image, or data that is not authorized for use or retention . . . .

Pursuant to N.J.A.C. 10A:4-9.2, Mesadieu was entitled to twenty-four hours to prepare his defense. Because he was charged with an asterisk offense, Mesadieu had the right to request representation by a counsel substitute pursuant to N.J.A.C. 10A:4-9.12. According to section eleven of the "Adjudication of Disciplinary Charge" form (ADC form), Mesadieu requested and was given the assistance of a counsel substitute and pleaded not guilty.

A hearing was conducted during the morning of November 21, 2019. NJDOC submitted Parker's disciplinary report, Fronczek's preliminary incident report, and photographs of the disk. Mesadieu requested written statements from inmates Raymond Skelton, who said "[i]nmate upon receiving his disks from paralegal all [three] disks were intact upon his returning the disks the metal

---

[1] Prohibited acts preceded by an asterisk "are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a).

piece was missing"; Matthew Heyman, who stated Mesadieu had returned the disk without the metal covering; and Dalal, whose statement is illegible due to the quality of the copy contained in the NJDOC's appellate appendix.

Mesadieu submitted a written statement, asserting he had complained to Parker multiple times about Skelton being "belligerent by using foul language in response to [his] requests." When Parker "refused" to resolve those issues, Mesadieu submitted a complaint about Parker, and Parker cut his law library time in half. Mesadieu described an incident in which he noticed the metal cover on a disk Skelton had provided to him was bent out of shape. According to Mesadieu, Parker told Skelton to give Mesadieu a new disk; experiencing difficulty transferring files from the old disk to the new disk, Skelton removed the metal cover on the old disk. After the file transfer was completed, Mesadieu returned the old disk and its metal cover to Skelton. Mesadieu stated when he asked for his assigned disk on November 19, he was given three disks, including the old, damaged disk, and "returned all disk [sic] in the same condition they were given to" him.

Mesadieu asked to confront Parker. In response to Mesadieu's written questions submitted pursuant to N.J.A.C. 10A:4-9.14(c), Parker stated only one

disk had been assigned to Mesadieu and a prior damaged disk had been discarded.[2] He denied the damaged disk had been returned to Mesadieu.

In section three of the ADC form, prohibited act number "009" is crossed out and "152" is written above it; the description "possession of electronic communication" is crossed out and "destroying state property" is written above it. Prohibited act .152 involves "destroying, altering, or damaging government property." N.J.A.C. 10A:4-4.1(a)(4)(i). Under certain circumstances a hearing officer has the authority to change a charge.

> Whenever it becomes apparent at a disciplinary hearing that an incorrect prohibited act is cited in the disciplinary report but that the inmate may have committed another prohibited act, the Adjustment Committee or Disciplinary Hearing Officer shall modify the charge. The inmate shall be given the option of a 24-hour postponement to prepare his or her defense against the new charge or have the new charge adjudicated at that time.
>
> [N.J.A.C. 10A:4-9.16(a).]

Section eight of the ADC form states "[i]f inmate waives [twenty-four] hours notice, obtain inmate's signature" but does not specify whether the "[twenty-four] hours notice" references the initial twenty-four-hour notice

---

[2] In his statement, Skelton confirmed Mesadieu's statement that he was given three disks and contradicted Parker's statement that he was given only one disk.

period provided pursuant to N.J.A.C. 10A:4-9.2 or the twenty-four-hour notice period provided for a change in charge pursuant to N.J.A.C. 10A:4-9.16(a). A signature appears next to the waiver statement in section eight. NJDOC asserts Mesadieu's counsel substitute signed the form, waiving the twenty-four-hour notice period for a change in charge on Mesadieu's behalf and signed the form in section sixteen, confirming the information in the report "accurately reflects what took place at the inmate disciplinary hearing." In section sixteen the space for the "[p]rinted name of inmate or counsel substitute" is blank.

According to information in section seventeen of the ADC form, the hearing officer found Mesadieu guilty of the .152 charge. In section eighteen of the ADC form, the hearing officer is required to set forth a "[s]ummary of evidence relied on to reach decision." Unfortunately, much of the information provided by the hearing officer in this section is indecipherable due to the poor copying quality and difficult-to-read handwriting. The hearing officer appears to reference a "modified charge" and seems to indicate Parker's report about a floppy disk, the photographs, and the other inmates' statements "support charge." She seems to reference Mesadieu's questions to Parker but we cannot discern what she says about them. We can make out the phrase "are responsible for property" but not the words that precede or follow that phrase. The hearing

officer did not make any legible credibility determinations. The hearing officer sanctioned Mesadieu to thirty days of administrative segregation and ten days of loss of recreational privileges.

Mesadieu administratively appealed the decision, referencing only the *.009 charge and arguing "[t]he allegations were unable to be corroborated with any evidence" because "[n]o witness was able to substantiate that . . . Mesadieu committed the damage or had knowledge of the allegations." In his appellate appendix, Mesadieu included identical copies of a document entitled "Disposition of Disciplinary Appeal" (disposition form). That document shows within hours of receiving the appeal on November 22, the assistant superintendent upheld the hearing officer's decision. Referencing only the *.009 charge, he stated the hearing officer had not misinterpreted the facts, NJDOC was "in compliance with procedural safeguards," and the "sanction is appropriate to the charge." The disposition form contains signature lines for the employee who delivers the form and the inmate to whom it is delivered. Both signature lines are blank and undated.

In its appellate appendix, NJDOC included two versions of the disposition form. One NJDOC version was like the copies contained in Mesadieu's appendix. On the other NJDOC version, the typewritten ".009" is crossed out

7

and ".152" is written in by hand. The delivery signature lines are signed, with the employee line dated December 3, 2019. The assistant superintendent's signature and the date and time written for his signature are the same: November 22, 2019, at 1:40 p.m. In its appellate brief, NJDOC refers to the first version of the disposition form as the "original" and the second version as the "updated" form, claiming it was issued, not just delivered, on December 3.

On appeal, Mesadieu asserts the disk was damaged when it was given to him with two other disks and claims Parker conspired with Skelton and filed the disciplinary report in retaliation. He argues that the hearing officer: should have dismissed the *.009 charge instead of downgrading it to a .152 charge; "exercised systemic racism" by downgrading the charge; and violated his due process rights by failing to postpone the hearing pursuant to N.J.A.C. 10A:4-9.16(a). He also contends NJDOC failed to "establish[] the requirement of voluntary act under [N.J.S.A.] 2C:2-1" because the damaged disk was in Skelton's possession. In response, NJDOC argues Mesadieu had the assistance of a counsel substitute as he requested, the counsel substitute waived on his behalf the twenty-four-hour notice period for a change in charge, and the hearing officer's finding of guilt was supported by substantial credible evidence in the record.

8

Our review of an administrative agency's final decision is limited. Commc'ns Workers of Am., AFL-CIO v. N.J. Civ. Serv. Comm'n, 234 N.J. 483, 515 (2018). We will not reverse an agency's decision unless "(1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007).

In an appeal from a final NJDOC decision in a prisoner disciplinary matter, we consider whether there is substantial evidence in the record to support the decision that the inmate committed the prohibited act. Blanchard v. N.J. Dep't of Corrs., 461 N.J. Super. 231, 237-38 (App. Div. 2019). An adjudication of guilt on a disciplinary charge must be supported by "substantial evidence." N.J.A.C. 10A:4-9.15(a). "Substantial evidence" has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." In re Hackensack Water Co., 41 N.J. Super. 408, 418 (App. Div. 1956); see also Figueroa v. N.J. Dep't of Corrs., 414 N.J. Super. 186, 192 (App. Div. 2010). We also must consider whether, in making its decision, NJDOC followed the departmental regulations governing disciplinary proceedings,

which were adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 219-22 (1995).

We begin with what we hope is an obvious statement: we cannot affirm a decision we are unable to read. The appellant and this court are entitled to a clear, legible statement of the hearing officer's decision. Without that, we are unable to determine with certainty the evidence on which she relied to reach her decision and whether it constitutes "substantial evidence" as required in N.J.A.C. 10A:4-9.15(a). Neither we nor the appellant should be forced to guess at what her decision was or on what it was based. We cannot base our decisions on speculation.

The circumstances surrounding the change in charge are similarly unclear. Pursuant to N.J.A.C. 10A:4-9.16(a), when the evidence presented did not correlate to a violation of prohibited act *.009 but showed Mesadieu may have committed the less serious prohibited act .152, the hearing officer had the authority to modify the charge. She could do so only if Mesadieu was given twenty-four hours to prepare to defend the new charge or waived his right to that twenty-four-hour period. A counsel substitute can waive that notice period on behalf of an inmate. It is not clear that happened here. The waiver section of

10

the ADC form is signed but we don't know by whom or which twenty-four-hour notice period is being waived. Moreover, in the "original" disposition form upholding the hearing officer's decision, the assistant superintendent references only the *.009 charge, thereby indicating the charge was never changed to a .152 charge. The murkiness of the record regarding the change of charge prevents us from concluding the charge was properly changed with the required notice to Mesadieu.

We cannot accept the "updated" disposition form as the actual disposition form. It appears after the assistant superintendent signed and issued the disposition form, someone crossed out *.009 and wrote in .152. We don't know who made that change or why it was made. The change was not confirmed by any new signature of the assistant superintendent, which leads us to conclude the assistant superintendent decided Mesadieu's appeal as if he had been found guilty of and sanctioned for a *.009 violation. Because the ADC form states Mesadieu was found guilty of a .152 violation, the assistant superintendent's findings based on a *.009 violation cannot stand.

Reversed and remanded for a new disciplinary hearing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                          A-2547-19