**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4553-18

MICHAEL VANCE, a/k/a
MICHAEL VANTASSAL, and
MICHAEL VANTASSEL,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted May 5, 2021 – Decided July 21, 2021

Before Judges Ostrer and Vernoia.

On appeal from the New Jersey Department of Corrections.

Michael Vance, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Stephanie M. Mersch, Deputy Attorney General, on the brief).

PER CURIAM

In this Department of Corrections disciplinary appeal, Michael Vance challenges the finding that while incarcerated at South Woods State Prison, he possessed contraband drugs — specifically, a synthetic cannabinoid. See N.J.A.C. 10A:4–4.1(a)(6)(i) (prohibited act *.203) (prohibiting "possession or introduction of any prohibited substances, such as drugs, intoxicants, or related paraphernalia not prescribed for the inmate by the medical or dental staff"); N.J.A.C. 10A:4–4.1(a) (stating that "[p]rohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions"). Because the Department relied on a field test of unproved reliability and denied Vance's request for a confirmatory test, we reverse.[1]

---

[1] According to Department of Corrections records, Vance was released from custody on February 14, 2021. State of New Jersey Department of Corrections, OFFICIAL SITE OF THE STATE OF NEW JERSEY https://www20.state.nj.us/DOC_Inmate/inmatesearch.jsp (type "Vance" in last-name field and "Michael" in first-name field; then click "Submit"; then follow "000201259C" hyperlink) (last visited June 29, 2021) (Department removes offender information one year after custodial term's completion). However, we decline to dismiss the appeal as moot. Although it is unclear if the finding will trigger collateral consequences, see Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 244 (App. Div. 1993) (stating that a case will be dismissed for mootness "if the potential of adverse collateral consequences is speculative and remote"), the Department's reliance on field tests raises an issue of significant public importance that will surely recur, see State v. Cassidy, 235 N.J. 482, 491 (2018) (declining to dismiss appeal as moot for similar reasons).

A-4553-18

A corrections officer reported that during a "non-routine strip search," he "discovered a bag of green leafy substance in a clear plastic bag wrapped in tissue . . . in an altered sewn pocket" in Vance's pants. A few days later, a special investigator, relying on a field test, reported that the substance tested positive for "Synthetic Cannabinoids Reagent." Vance was charged with a *.203 prohibited act for possessing the alleged synthetic cannabinoid, and a hearing officer found him guilty.[2] To support her finding, the hearing officer cited the field test and the corrections officer's report. For that infraction, Vance received 180 days of administrative segregation, ninety days' loss of commutation time, permanent loss of contact visits, and other sanctions.

On appeal, Vance contends that the Department acted arbitrarily and capriciously and denied him due process by relying on the field test as proof of guilt after denying his request to submit the substance for further testing. Vance asserted that the hearing officer stated that the field test was sufficient evidence of guilt. He also contends that the hearing officer arbitrarily refused to obtain

---

[2] Because Vance tested positive for suboxone, another hearing officer found him guilty of a *.204 prohibited act, see N.J.A.C. 10:4–4.1(a)(6)(ii) (prohibiting "use of any prohibited substances, such as drugs, intoxicants, or related paraphernalia not prescribed for the inmate by the medical or dental staff"); however, Vance appeals only the finding of a *.203 infraction.

and examine color photos of the leafy substance. Vance argues that it was brown, not green.

Vance's arguments rely heavily on our decision in Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231 (App. Div. 2019). The Department counters that Blanchard is distinguishable on its facts, and that substantial credible evidence supports the finding against Vance.

In Blanchard, we reversed a finding of a *.203 infraction that relied on a field test. The test indicated that the inmate's powder, which he kept inside rolled or folded magazine paper tucked in a paperback book, was cocaine and not a coffee sweetener as he contended. Four primary considerations led us to hold that the Department acted arbitrarily, capriciously or unreasonably in denying the inmate's request for a confirmatory laboratory test.

First, we relied on the field test's unproved reliability and the lack of evidence that a properly-trained special investigator performed the test. Id. at 243-46. We recognized that, because the Department need not apply the Rules of Evidence, the test's admissibility was not at issue. Id. at 243. But at the same time, we stated, "[T]he test's reliability is pertinent to whether the agency has provided a fundamentally fair hearing, and met its burden of proof." Ibid.

4

Second, we pointed to the dearth of evidence corroborating the claim that the inmate possessed drugs. Id. at 246-47. Third, we concluded that the Department's policy of routinely sending specimens for confirmatory tests indicated that the Department recognized a field test's limitations, and also indicated that confirmatory testing was "not unduly burdensome." Id. at 247.[3] And fourth, we cited the Department's failure to provide any reasoned explanation for refusing Blanchard's request for a confirmatory test. Id. at 247-48.

The Department does not address factors one, three, or four; we therefore conclude that they are present in this case, just as they were in Blanchard. Notably, with regard to factor one, the manufacturer of the Nark II field test for synthetic cannabinoids used in Vance's case states on its own website, "ALL TEST RESULTS MUST BE CONFIRMED BY AN APPROVED ANALYTICAL LABORATORY! The results of this test are merely presumptive. NARK® only tests for the possible presence of certain chemical compounds. Reactions may occur with, and such compounds can be found in, both legal and illegal products." NARK II Synthetic Cannabinoid Reagent,

_____

[3] The Department amended its regulation, which it once limited to urine, to cover confirmatory testing of other bodily specimens. Id. at 241, n.5.

SIRCHIE (emphasis added), https://www.sirchie.com/nark-ii-synthetic-cannabinoid-reagent-5-tests.html#.YNU9l_KSmUk (last visited June 29, 2021). Of course, scientific test-results need not be infallible to be admissible. Cassidy, 235 N.J. at 491-92 (stating that "[s]cientific test results are admissible in a criminal trial only when the technique is shown to be generally accepted as reliable within the relevant scientific community"). But here, the Department presented no evidence at all regarding the field test's accuracy. Furthermore, regarding factor four, the department did not explain why it refused a confirmatory test — even though it evidently used a laboratory test of Vance's urine to conclude that he used suboxone.[4] In her written decision, the hearing officer did not address Vance's request for a confirmatory test. Vance contends on appeal that she "claimed that the field test was sufficient for a guilty finding."

So, we focus on factor two. The Department contends that, in contrast to Blanchard, there was corroborating evidence that Vance possessed a synthetic cannabinoid: Vance secreted the leafy substance in a plastic bag in a hidden pocket in his pants, and he was present in a restricted area without authorization.

---

[4] We rely on Vance's submission for this assertion about the urine test. Unfortunately, the Department document which he cites for support contains unexplained abbreviations.

But those facts are insufficient to offset the hearing-officer's reliance on the field-test results.

We stated that "[t]he sole issue" in Blanchard was "whether, in a case with a single positive field test of unproved reliability, and no other corroborating evidence, procedural fairness compels a second, confirmatory test, to assure that the field test did not produce a false positive." Blanchard, 461 N.J. Super. at 241. We did not decide — because we did not have to — whether corroborating evidence could salvage a finding that relied on a field test of unproved reliability. We do so now.

We conclude that the additional facts the Department cites do not constitute substantial credible evidence supporting the finding of guilt. Neither do they mean that Vance received a fair hearing. Evidence of Vance's allegedly-unauthorized presence in a restricted area and of his hidden pocket does not excuse the Department's failure to obtain a confirmatory test and its reliance on a field test of unproved reliability. We reach that conclusion for three reasons.

First, the hearing officer did not state that she relied on the allegation that Vance was in an unauthorized area to meet another inmate. Instead, she referred only to the field test (and the report of the officer who described how he found the bag in Vance's hidden pocket). Thus, we cannot conclude that her reliance

7

A-4553-18A-4553-18

on the field test was "harmless." See Jacobs v. Stephens, 139 N.J. 212, 219 (1995) (applying "harmless-error analysis" to denial of inmate's procedural rights).

Second, the hearing officer made no finding on why Vance was in the medical area. According to a sergeant's report — which the hearing officer did not cite to support her findings — Vance admitted that he was in the medical area to meet another inmate. But on appeal, he contends that he was there to receive medication. It is not for us to resolve this dispute on appeal.

Third, the allegedly corroborating evidence — even if credited — is far from overwhelming. Vance's secret pocket may bespeak contraband, but it does not so clearly bespeak drugs. Vance contended that the vegetation in his pocket was tobacco, which was itself contraband. And even if Vance was in the medical area for an unauthorized meeting, that fact does little to prove he possessed synthetic cannabinoids. Instead, it tends to show that he used suboxone. The other inmate allegedly possessed suboxone, and both he and Vance tested positive for that substance.

Substantial evidence must underlie an agency's finding. In re Carter, 191 N.J. 474, 483 (2007); Blanchard, 461 N.J. Super. at 237-38; N.J.A.C. 10A:4-9.15(a). In other words, the finding must rest on "such evidence as a reasonable

mind might accept as adequate to support a conclusion." Blanchard, 461 N.J. Super. at 238.

The record before us does not meet that threshold. Absent evidence of the field test's reliability, we are unpersuaded (especially in light of the manufacturer's caveat) that a reasonable mind would find the test adequate to support a finding of guilt. Nor does the additional evidence tip the balance.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4553-18